[No. 44779.   En Banc.   November 16, 1978.]

S. LLOYD DUCKWORTH, ET AL, *Respondents,* v. THE CITY OF BONNEY LAKE, *Appellant.*

20

*George S. Kelley,* for appellant.

*Rutherford, Kargianis & Austin,* by *Russell A. Austin, Jr.,* and *George Kargianis,* for respondents.

STAFFORD, J.—This is an appeal from a summary declaratory judgment holding unconstitutional a portion of the Bonney Lake zoning ordinance.

Respondents, Mr. and Mrs. S. Lloyd Duckworth (Duckworths), own a lot in the RS zone of appellant City of Bonney Lake. In 1976, the City granted a building permit which authorized the Duckworths to place a mobile home on their lot. Thereafter the City apparently revoked the permit on the ground that placement of mobile homes in the RS single family residence zone is not a permitted use. The Duckworths sought a declaratory judgment that there is "no prohibition in the Bonney Lake Ordinances nor could such a prohibition constitutionally exist, prohibiting placement of plaintiffs' mobile home as a single family residence" on their lot.

At the close of all pleadings the Duckworths moved for a summary judgment to declare that there is no legal prohibition against their placement of the mobile home on their lot. After considering "the pleadings, the statements of counsel . . . the briefs . . . and any admission[s] . . . made," the trial court entered findings of fact and conclusions of law. Based thereon, the trial court granted the Duckworths' motion and entered a summary judgment declaring that the zoning code is unconstitutional insofar as it excludes mobile homes from RS zones (single family residence areas).

The City has appealed.

## I
## Factual Matters

Initially it is necessary to clarify those facts which are properly before us. Although the Duckworths rely heavily upon the trial court's findings of fact and conclusions of law to support the summary judgment, this reliance is misplaced. The function of a summary judgment proceeding is to *determine whether a genuine issue of material fact exists.* It is *not,* as appears to have happened here, *to resolve issues of fact or to arrive at conclusions based thereon. State ex rel. Zempel v. Twitchell,* 59 Wn.2d 419, 424–25, 367 P.2d 985 (1962). Consequently, the findings of fact and conclusions of law entered here are superfluous

and may not be considered to the prejudice of the City. *Washington Optometric Ass'n v. County of Pierce*, 73 Wn.2d 445, 438 P.2d 861 (1968); *State ex rel. Carroll v. Simmons*, 61 Wn.2d 146, 377 P.2d 421 (1962); *State ex rel. Zempel v. Twitchell, supra* at 425. *See Gwinn v. Church of the Nazarene*, 66 Wn.2d 838, 405 P.2d 602 (1965).

One who moves for summary judgment, in this case the Duckworths, must prove *by uncontroverted facts* that no genuine issue of material fact exists. This is true whether the opponent, *i.e.*, the City, has the burden of proof on the issue at trial. *Hudesman v. Foley*, 73 Wn.2d 880, 441 P.2d 532 (1968); *Peninsula Truck Lines, Inc. v. Tooker*, 63 Wn.2d 724, 388 P.2d 958 (1964); *American Universal Ins. Co. v. Ranson*, 59 Wn.2d 811, 370 P.2d 867 (1962); *Preston v. Duncan*, 55 Wn.2d 678, 349 P.2d 605 (1960). In support of a motion for summary judgment the movant may rely on pleadings, depositions, answers to interrogatories, affidavits and admissions on file to determine whether there is a genuine issue as to any material fact. CR 56(a), (b), (c).

In the instant case there are no depositions, answers to interrogatories, affidavits, or admissions on file to establish the requisite *uncontroverted facts*. Moreover, although the trial court considered factual matters raised solely in the Duckworths' trial brief and oral argument, it was not entitled to give *weight* to them to resolve factual issues. 6 J. Moore, *Federal Practice* ¶ 56.11[1.08], at 56–202 (2d ed. 1948).

The Duckworths have made many broad, interesting, and self–serving statements in their pleadings, trial briefs and appellate brief. Nevertheless, those which are not supported by *uncontroverted facts* are not properly before us on summary judgment. Thus, our review must be limited to considering only the *uncontroverted facts* developed by the pleadings, or by factual concessions made in the City's brief.

The *uncontroverted facts* before us on appeal are the following: Bonney Lake is a third class city incorporated in Pierce County. In 1967 the City adopted a zoning code

which was amended in 1969. Insofar as applicable the code provides:

> § 2. *Location. Mobile homes shall be permitted* in the City of Bonney Lake . . . *only in those areas designated* by the comprehensive plan or ordinances *to be mobile home areas.*

Bonney Lake zoning ordinance No. 295 (1969).

> R.S.—Single Family Residential Districts.
> 22–01 *Uses Permitted Outright.* The following uses may be . . . permitted outright in an R.S.–Zone . . .
> (a) *Single family residences,*
> (b) Churches . . .

Bonney Lake zoning ordinance No. 241 (1967).

> R.D.—Duplex and trailer residential district.
> 23–01 *Uses Permitted Unconditionally.* The following uses may be operated as uses permitted unconditionally in an R.D.–Zone . . .
> (a) Single family residences,
> (b) duplexes (two family residence),
> (c) *trailers (mobile homes)*

(Italics ours.) Bonney Lake zoning ordinance No. 241 (1967).

The zoning code does not define "mobile home" but it does provide that words are to be "given their usual and customary meanings except where the context clearly indicates a different meaning." Bonney Lake ordinance No. 241, ch. II(c) (1967).

The Duckworths own a city lot which is zoned R.S. (single family residence). On October 28, 1976, the City issued the Duckworths a building permit authorizing them to place a 24– by 64–foot mobile home on their lot. The mobile home has a living area of approximately 1,500 square feet and was manufactured in compliance with state and federal construction safety standards for such homes. *See* RCW 43.22.340–.420; 42 U.S.C. 5401, 5402, 5403; 24 C.F.R. 280.01 *et seq.* Such compliance with state and federal construction safety standards is deemed compliance with local building code standards of safety for mobile homes. The Duckworths planned to place the mobile home

upon a permanent foundation and attach it to existing utilities.

On November 16, 1976, following delivery of the mobile home, the Duckworths were notified that the City had revoked their building permit. According to the City, the zoning code authorized the Duckworths to place their mobile home only in the R.D. zone because mobile homes could be placed only in "designated" areas and the R.D. zone was the only area so "designated" vis–a–vis R.S. and R.D. zones.

## II
## Legal Issues Not Before Us

In addition to raising numerous factual matters which are not properly before us on appeal the Duckworths also have improperly raised many legal issues. Failure to reject them from our consideration of the motion for summary judgment could embroil us unnecessarily in emotional nonissues. We thus make clear that the following substantive issues are not before us because they were not raised below or are unsupported by uncontroverted facts. (A) Whether a mobile home is a "single family residence" as permitted in an R.S. zone is not before us because the parties expressly abandoned this issue. At the express request of the parties the trial court ruled exclusively on the constitutional issue.[1] (B) The content or nature of the building permit and whether revocation of the permit was based

---

[1]Although the trial court originally planned to rule that a mobile home was a "single family residence" as a matter of law, both parties asked that the matter be resolved solely on constitutional grounds and the trial court complied. Nevertheless, the Duckworths devote considerable attention on appeal to whether a mobile home is comparable to and in fact is a "single family residence." The argument is irrelevant. At the request of both parties, the issue was abandoned and was not ruled upon by the trial court. Moreover, the zoning code clearly excludes mobile homes from the R.S. zone whether they are or are not "single family residences." In this respect, the zoning code provides that "Mobile homes shall be permitted . . . only in those areas designated . . . to be mobile home areas." The *only* area so "designated" for mobile homes is the R.D. zone. Consequently, whether Duckworths' mobile home is a "single family residence" is irrelevant because it *is* a mobile home and thus is a permissible use only in an R.D. zone.

upon a proper administrative interpretation of the ordinance are not before us on summary judgment. (C) Whether a city may constitutionally exclude *all* mobile homes is not an issue, there being *no claim of total exclusion.* (D) The timeliness of the City's revocation of the building permit was not raised below and is not an issue. (E) Whether the ordinance is overbroad or void for vagueness is not before us. (F) The desirability of the R.S. zone vis–a–vis the R.D. zone was not raised below and is not an issue. (G) *The record properly before us on summary judgment does not raise* the financial, utilitarian, architectural, structural or aesthetic desirability of mobile homes in general or the Duckworths' mobile home in particular. (H) There is no issue raised on summary judgment concerning the Duckworths' income group, race, class, caste or creed. In fact, the subject of low income housing or persons is not present.

## III
## Issues on Appeal

As we have indicated, the trial court ruled solely on the constitutionality of the City's exclusion of mobile homes from the R.S. (single family residence) zone. The primary issue on appeal thus becomes whether a city may constitutionally exercise its police power to adopt a zoning code which prohibits placement of mobile homes in one residential area while authorizing their use in another area not shown to be undesirable. A secondary issue raised by this appeal is whether the City abused its police power by enacting the exclusion in the challenged zoning code.

## IV

Did the trial court err in holding unconstitutional a zoning ordinance that distinguishes between mobile homes and conventional homes for the purpose of placing them in different areas?

The Duckworths challenged as unconstitutional the City's use of its *legislative* power to exclude mobile homes

from the R.S. zone and to restrict their location to the R.D. zone. On this issue, the trial court ruled the City had the burden of proof to demonstrate that the exclusion of mobile homes from the R.S. zone was a reasonable exercise of its police power. Further, the trial court determined the City had failed to meet its burden and thus the exclusion was unconstitutional. In the context of a summary judgment, the trial court's determination was erroneous.

The power of the City to plan for its physical development through zoning stems from RCW 35.63.080 which provides in part:

> *For this purpose the council* . . . in such measure as is deemed reasonably necessary or requisite in the interest of health, safety, morals and the general welfare . . . by general ordinances . . . *may regulate and restrict the location and the use of buildings, structures and land for residence* . . . and other purposes; the . . . construction and design of buildings . . . and the subdivision and development of land.

(Italics ours.)

■ Municipal zoning ordinances enacted pursuant to such statutory authority will be held constitutional[2] as a valid exercise of the police power if they bear a substantial relation to the public health, safety, morals or general welfare. *Lutz v. Longview,* 83 Wn.2d 566, 520 P.2d 1374 (1974); *McNaughton v. Boeing,* 68 Wn.2d 659, 414 P.2d 778 (1966). *See also Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 71 L. Ed. 303, 47 S. Ct. 114, 54 A.L.R. 1016 (1926). Two inquiries must be made when measuring such legislative enactments against the permissible bounds of the police power.

The initial inquiry is whether the legislation tends to promote the public health, safety, morals or welfare. *Crane Towing, Inc. v. Gorton,* 89 Wn.2d 161, 168, 570 P.2d 428

---

[2]The constitutionality of RCW 35.63.080 has not been challenged herein and thus is not an issue. For that matter, no one suggests the ordinance is unconstitutional because of any claimed *total* exclusion of mobile homes from the City. Rather, the zoning ordinance is said to be unconstitutional solely because it excludes mobile homes from the City's R.S. zone.

(1977); *State v. Conifer Enterprises, Inc.*, 82 Wn.2d 94, 96, 508 P.2d 149 (1973); *Clark v. Dwyer*, 56 Wn.2d 425, 353 P.2d 941 (1960), *cert. denied*, 364 U.S. 932 (1961). If it does, the wisdom, necessity and policy of the law are matters left exclusively to the legislative body. *Crane Towing, Inc. v. Gorton, supra* at 168; *State v. Conifer Enterprises, Inc., supra* at 96.

The second inquiry is whether the legislation bears a reasonable and substantial relation to accomplishing the purpose established by the first inquiry. *Crane Towing, Inc. v. Gorton, supra* at 168; *State v. Conifer Enterprises, Inc., supra* at 97; *Markham Adv. Co. v. State*, 73 Wn.2d 405, 420–21, 439 P.2d 248 (1968).

The two inquiries cannot be made in a vacuum. The public interest to be promoted or the evil to be corrected and the relationship of the legislation to this public purpose must be determined. To this end the court necessarily engages in certain presumptions. *Crane Towing, Inc. v. Gorton, supra* at 169; *State v. Conifer Enterprises, Inc., supra* at 97. If the court can reasonably conceive of a state of facts which would warrant the legislation, those facts will be presumed to exist. Further, it will be presumed that the legislation was passed with reference to those facts. *Crane Towing, Inc. v. Gorton, supra* at 169; *State v. Conifer Enterprises, Inc., supra,* at 97; *State v. Laitinen*, 77 Wn.2d 130, 133, 459 P.2d 789 (1969); *Markham Adv. Co. v. State, supra* at 420; *Lenci v. Seattle*, 63 Wn.2d 664, 668, 388 P.2d 926 (1964).

These rules are more than mere rules of judicial convenience. They establish the line of demarcation between legislative and judicial functions. *Crane Towing, Inc. v. Gorton, supra* at 169; *State v. Conifer Enterprises, Inc., supra* at 97; *Reesman v. State*, 74 Wn.2d 646, 650, 445 P.2d 1004 (1968); *Lenci v. Seattle, supra* at 668.

In examining the validity of the City's zoning code, we first observe that the purpose of zoning is not to increase or decrease the value of any *particular* lot or tract. Rather it is to benefit the *community generally* by the

intelligent planning of land uses without unreasonable discrimination. The "general purpose" of zoning is to stabilize uses, conserve property values, preserve neighborhood characters, and promote orderly growth and development. *McNaughton v. Boeing, supra* at 661. *See also* B. Hodes & G. Roberson, *The Law of Mobile Homes* 190 (3d ed. 1974). As Charles S. Rhyne states in *Municipal Law* (1957) at page 943:

> Zoning stabilizes the uses of land and furnishes a protection to residential neighborhoods which will cause them to maintain themselves in a decent and sanitary way and protects the civic and social values of the American home. Thus, residential . . . districts may be established and all nonconforming and conflicting uses excluded therefrom so long as the classification is reasonably related to the welfare, health, and safety of those living in the district.

(Footnotes omitted.)

We recognize that rapid increase in the number of mobile homes presents a complex zoning and planning problem. As with every new use, mobile homes must be provided for. But, any provision made must be by zoning regulations designed to fit the community's *total* need. We are also cognizant that increased mobile home use has developed in a climate of municipal and neighborhood hostility which originally impeded efforts to effect reasonable and rational accommodations between the mobile homes and more conventional residential uses. 2 R. Anderson, *American Law of Zoning* § 1401, at 547 (2d ed. 1976).

■ Generally speaking, however, most municipal efforts to *totally exclude* mobile homes from a community have been found unconstitutional as an unreasonable exercise of police power. *American Law of Zoning* § 14.04, at 558–62; Annot., *Use of trailer or similar structure for residence purposes as within limitation of restrictive covenant, zoning provision, or building regulation,* 96 A.L.R.2d 232, § 3[a], at 237 (1964). However, and in recognition of differing needs, it is well settled that while such homes may not be *totally excluded,* they may be classified separately from

other residential uses for purposes of regulation. *American Law of Zoning* § 14.01, at 550 and § 14.05, at 562–66; 96 A.L.R.2d, *supra* at 232, § 3[b], at 238. As so regulated, mobile homes may be restricted to certain zones and excluded from others. *The Law of Mobile Homes, supra* at 189; *American Law of Zoning* § 14.05, at 562–66. It is also generally accepted that these types of restrictions upon use have several reasonable bases.

First, mobile homes tend to stunt growth potential of the land and have an adverse effect upon the development potential of a neighborhood. *American Law of Zoning* § 14.01, at 550, § 14.05, at 563. Quite apart from whether mobile homes are less beautiful or more attractive than conventional dwellings, they do not look like conventional homes. This difference in appearance has persuaded many municipalities that mobile homes in conventional home neighborhoods will depress property values. In this regard it is generally recognized that the exterior architectural appeal and functional plan of a structure should not be so at variance with either the exterior architectural appeal or functional plan of the structures already constructed or in the course of construction, in the immediate neighborhood, as to cause substantial depreciation in the property value of the neighborhood. *See State ex rel. Saveland Park Holding Corp. v. Wieland,* 269 Wis. 262, 69 N.W.2d 217, *cert. denied,* 350 U.S. 841 (1955). In short, the very fact of structural difference may make mobile homes an architectural and economic depreciating factor in a conventional residential neighborhood whereas the effect will be quite the contrary if located in a mobile home zone. The difference in appearance and its recognized potential effect upon an existing neighborhood of conventional homes is a legitimate and significant factor to consider in enacting zoning laws. *American Law of Zoning* § 14.01, at 548.

A second reason for separate classification of mobile homes is that they commonly have minimum storage capacity. This conceivably may encourage an overflow of the miscellany of children's vehicles, toys and various tools.

If these storage problems are not addressed by the individual owner, the result to the community may be increased clutter or the mushrooming of sheds and other temporary shelters.

Space limitations also may generate other municipal concerns. In discussing planned development controls for mobile homes, Frederick H. Blair, Jr., recognizes that mobile homes also generally lack garage space and thus may require additional municipal planning for parking to meet the needs of the owners, their neighbors, and their guests without interference with normal movement of traffic. F. Blair, *Regulation of Modular Housing with Special Emphasis on Mobile Homes* 78–80 (1971).

It has also been recognized that while the need for municipal services may be similar for both conventional housing and mobile homes, these needs generally vary in degree. Thus, requiring that different types of housing be maintained in separate zones cannot be deemed unreasonable or without a rational relationship to the differing needs for municipal services. *See American Law of Zoning* § 14.05, at 563; *see also McKie v. County of Ventura,* 38 Cal. App. 3d 555, 113 Cal. Rptr. 143 (1974).

Finally, considerations of attractiveness and beauty in the sense of surrounding conventional architecture are also appropriate municipal concerns when planning for the general welfare. *See Lionshead Lake, Inc. v. Wayne Twp.,* 10 N.J. 165, 177, 89 A.2d 693 (1952). While we have indicated that aesthetic considerations alone may not support invocation of the police powers, the fact that aesthetics play *a* part in adoption of zoning ordinances does not affect its validity if the regulation finds reasonable justification in serving a generally recognized ground for exercise of the police power. *Polygon Corp. v. Seattle,* 90 Wn.2d 59, 70, 578 P.2d 1309 (1978); *Department of Ecology v. Pacesetter Constr. Co.,* 89 Wn.2d 203, 571 P.2d 196 (1977). *See* 6 McQuillin, *Municipal Corporations* §§ 24.15, 24.16, at 476 *et seq.* (rev. vol. 1969).

In sum, it is generally recognized that where a municipality provides an adequate area for mobile home development, as was done in the instant case, mobile homes may be excluded from conventional residential districts. As we have said, a municipality may exclude them from conventional residential districts because as a nonconventional use they tend to lower, adversely affect, or at least stunt the growth potential of the surrounding land. *Regulation of Modular Housing, with Special Emphasis on Mobile Homes* 62; *American Law of Zoning* § 14.05, at 563. This problem does not derive from aesthetics alone. Economic concerns as well as concerns for orderliness, adequate parking and the proper supply of municipal services are also legitimate bases for regulation. *See Berman v. Parker,* 348 U.S. 26, 99 L. Ed. 27, 75 S. Ct. 98 (1954).

A city which is systematically planned and developed to include all types of living units in an orderly pattern offers greater attractiveness to the home seeker than one which is allowed to develop in a haphazard way. If zoning regulations stabilize the value of property, promote the permanency of home surroundings, and add to the happiness and comfort of the citizens, they most certainly promote the general welfare. *See Cady v. Detroit,* 289 Mich. 499, 286 N.W. 805 (1939); *State ex rel. Carter v. Harper,* 182 Wis. 148, 196 N.W. 451 (1923). As Mr. Justice Douglas said in the landmark redevelopment case of *Berman v. Parker, supra* at 33:

> The concept of the public welfare is broad and inclusive. . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well–balanced as well as carefully patrolled.

After reviewing the foregoing subject, we must return to the basic rule which provides: "if the court can reasonably conceive of a state of facts to exist which justify the legislation, those facts will be presumed to exist." *Crane Towing,*

*Inc. v. Gorton,* 89 Wn.2d 161, 169, 570 P.2d 428 (1977); *State v. Conifer Enterprises, Inc.,* 82 Wn.2d 94, 97, 508 P.2d 149 (1973); *State v. Laitinen,* 77 Wn.2d 130, 459 P.2d 789 (1969); *Markham Adv. Co. v. State,* 73 Wn.2d 405, 439 P.2d 248 (1968).

With the foregoing considerations in mind, we hold that a set of facts can be conceived which reasonably might have prompted the City to enact the challenged zoning code. *Crane Towing, Inc. v. Gorton, supra; State v. Conifer Enterprises, Inc., supra; State v. Laitinen, supra; Markham Adv. Co. v. State, supra.* Moreover, the zoning code tends to promote the health, safety and welfare of the City's residents. More specifically, it tends to correct a conceivable evil and to promote the City's interest in orderly growth and development.

We also conclude that the City's zoning code bears a reasonable and substantial relation to accomplishing these presumed purposes. It is neither fanciful nor merely aesthetic. On the contrary, it is reasonable in application and has a real relation to the public health, safety and general welfare. Within the limits of the few uncontroverted facts before us on summary judgment, we hold that the City may constitutionally exercise its police power to exclude mobile homes from the R.S. zone.

## V

Did the trial court err by holding that the city abused its police power in enacting the challenged ordinance?

As we have indicated, a city may constitutionally exercise its police power and regulate land uses by providing separate areas for mobile homes and conventional housing. We now must consider whether the trial court correctly determined *on summary judgment* that the City abused its power by enacting the challenged land use restrictions. In this respect, the trial court determined that the City failed to prove the challenged provisions were a reasonable exercise of its power. On appeal, the Duckworths maintain that

the trial court correctly placed the burden of proof upon the City citing *State ex rel. Wenatchee Cong. of Jehovah's Witnesses v. Wenatchee,* 50 Wn.2d 378, 383, 312 P.2d 195 (1957). We disagree.

In *Wenatchee,* we held that the government has the burden of demonstrating the reasonableness of its *administrative* actions. *State ex rel. Wenatchee Cong. of Jehovah's Witnesses v. Wenatchee,* at 383. A different rule applies in the *legislative* setting. The burden of establishing invalidity of a *legislative* enactment rests heavily on the party asserting its unconstitutionality. Moreover, every presumption will be indulged in favor of constitutionality. *Crane Towing, Inc. v. Gorton, supra* at 169; *State v. Conifer Enterprises, Inc., supra* at 97; *Lenci v. Seattle, supra* at 668. *See also Parkridge v. Seattle,* 89 Wn.2d 454, 460–61, 573 P.2d 359 (1978).

These rules, like those considerations relevant to whether a City has constitutionally exercised its police power, are more than mere rules of judicial convenience. They establish the line of demarcation between legislative and judicial functions. *Crane Towing, Inc. v. Gorton, supra* at 169; *State v. Conifer Enterprises, Inc., supra* at 97; *Lenci v. Seattle, supra* at 668.

Nevertheless, the Duckworths suggest that we should abandon our adherence to the foregoing rule governing the burden of proof for legislative acts and apply the *Wenatchee* rule to the City's zoning code. In this respect, the Duckworths rely on authority from Michigan and Pennsylvania.

Although Michigan at one time apparently did follow our *administrative* rule on burden of proof, it has now abandoned it in favor of the one recognized by us, when a potential housing use is not *totally* excluded. *See Kropf v. Sterling Heights,* 391 Mich. 139, 215 N.W.2d 179 (1974). Moreover, the Pennsylvania courts also will shift the burden of proof and negate any presumption of validity attaching to a zoning enactment *only if* the challenging

party first shows a *total exclusion* of an otherwise legitimate use. *General Battery Corp. v. Zoning Hearing Bd.,* 29 Pa. Commw. Ct. 498, 371 A.2d 1030 (1977). Here, we are not concerned with the *total* prohibition of mobile homes. Thus, neither the Michigan nor the Pennsylvania rules are applicable. We see no reason for changing the longstanding presumption of validity followed by this and most other courts.

As we have indicated, municipal zoning ordinances will be upheld as valid exercises of the police power if they bear a substantial relation to the public health, safety, or general welfare. *Lutz v. Longview,* 83 Wn.2d 566, 574–75, 520 P.2d 1374 (1974); *McNaughton v. Boeing,* 68 Wn.2d 659, 662, 414 P.2d 778 (1966). We have also determined that a substantial relation exists between the City's ordinance and the public health, safety and general welfare. That being true, a court may overturn the City's exercise of its legislative authority only for manifest abuse of discretion, *i.e.,* for arbitrary and capricious conduct. *Lutz v. Longview, supra* at 574–75; *Buell v. Bremerton,* 80 Wn.2d 518, 526, 495 P.2d 1358 (1972); *Sharninghouse v. Bellingham,* 4 Wn. App. 198, 200–01, 480 P.2d 233 (1971). The burden of proving such abuse rests upon the challenging party and *not upon the city. Farrell v. Seattle,* 75 Wn.2d 540, 543, 452 P.2d 965 (1969); *State ex rel. Myhre v. Spokane,* 70 Wn.2d 207, 210, 422 P.2d 790 (1967); *Sharninghouse v. Bellingham, supra* at 201. *See Lutz v. Longview, supra; McNaughton v. Boeing, supra.* Consequently, the trial court erred by placing the burden of proof on the City.

If reasonable minds can differ concerning whether a particular zoning restriction has a substantial relationship to the public health, safety or general welfare, *no* abuse of discretion is established and the legislative act must stand. *Lutz v. Longview, supra;* 8A McQuillin, *Municipal Corporations* § 25.279 (3d ed. 1977). After reviewing the very limited uncontroverted facts and considering the nature of the pleadings, we can only conclude that the Duckworths failed

to meet *their* burden of proving the City acted arbitrarily or capriciously.

## VI
### Is an asserted housing shortage a reason to overturn the zoning ordinance?

The Duckworth brief alludes to an asserted housing shortage as a reason for overturning the ordinance. The issue is not properly before us on summary judgment. Nothing in the pleadings or in the uncontroverted facts supports this assertion. We also reject the argument because a shortage, if in fact it exists, is not a valid reason for overturning a zoning ordinance. *Lower Merion Twp. v. Gallup,* 158 Pa. Super. 572, 46 A.2d 35 (1946).

### Conclusion

Because of the summary nature of this proceeding and the fact that we are limited to the few *uncontroverted material facts* revealed in the pleadings and by the City's limited factual concessions, we hold that the trial court erred in holding the challenged portion of the City's ordinance unconstitutional.

The cause is remanded for trial and determination on the merits in a manner consistent with this opinion.

WRIGHT, C.J., and ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.