[No. 52264-2. En Banc. December 11, 1986.]

CONVENTION CENTER COALITION, *Appellant,* v.
THE CITY OF SEATTLE, ET AL,
*Respondents.*

*Peter J. Eglick,* for appellant.

*Douglas N. Jewett, City Attorney,* and *James E. Fearn, Jr., Assistant,* for respondent City of Seattle.

*Hillis, Cairncross, Clark & Martin, P.S.,* by *Jerome L. Hillis* and *Richard R. Wilson,* and *Culp, Dwyer, Guterson & Grader,* by *John S. Ebel,* for respondent Washington State Convention and Trade Center.

*Roberts & Shefelman, Thomas M. Walsh, J. Tayloe Washburn,* and *Lizbeth A. Englund (Omar S. Parker, Jr.,* and *Perkins Coie,* of counsel), for respondent Westside Federal Savings and Loan Association.

BRACHTENBACH, J.—Was the Seattle City Council's enactment of a new housing preservation ordinance that exempted the Washington State Trade and Convention Center from certain housing replacement requirements a valid legislative act? The trial court answered yes. After

direct review, we affirm.

Respondent Washington State Convention and Trade Center Corporation (WSCTC) is a public nonprofit corporation established pursuant to RCW 67.40 to acquire, construct and operate a state convention and trade facility (convention center) in Seattle. Appellant Convention Center Coalition is a Washington nonprofit corporation established to promote sound budgeting, siting and planning for the WSCTC project. The Coalition is particularly concerned with minimizing any adverse impacts of the convention center on the surrounding community.

WSCTC has begun construction of the convention center in downtown Seattle at a site spanning the Interstate 5 freeway corridor in downtown Seattle. The proposed project includes both public and private components. Originally, the private portion of the project was to be developed by CHG International, Inc., and CHG/Herfin Associates Seventh Avenue (collectively referred to as CHG), which owned substantial portions of the real estate on which the project is to be built. After CHG experienced financial difficulties, however, Westside Federal Savings and Loan Association acquired CHG's interest in the project. Westside Federal, in turn, also experienced financial difficulties. Finally, the Federal Home Loan Bank Board appointed respondent Federal Savings and Loan Insurance Corporation (FSLIC) as receiver for Westside Federal. By stipulation of the parties, FSLIC became a party defendant in lieu of Westside Federal.

WSCTC elected to comply voluntarily with respondent City of Seattle's local land use approval process. WSCTC first applied for zoning approval in 1983. In May 1984, the Seattle City Council amended the Seattle Municipal Code to allow construction of a convention center in certain zones. The Council enacted a related ordinance setting forth the criteria to be considered in establishing conditions as part of the use permit for any facility approved.

In June 1984, WSCTC applied for a conditional use permit from the Council. After public hearings on WSCTC's

permit application, a hearing examiner recommended that the Council grant the permit subject to certain conditions. In October 1984, the Council granted WSCTC's conditional use permit. The conditions imposed by the Council included specific housing replacement and mitigation provisions that WSCTC and CHG were obligated to satisfy. The Council made no reference in the permit to an existing housing preservation ordinance, although two references were made in the Council's findings and conclusions in support of its decision to grant the permit.

Several months after the Council issued the permit, a dispute arose concerning the intent of the permit housing mitigation provisions. Councilman Kraabel took the position that the permit was complete as passed with regard to the housing mitigation provisions. Councilman Street contended that the permit was meant to be supplemented by the existing housing preservation ordinance, and that the Council had intended that WSCTC and CHG comply with both the existing ordinance and the housing mitigation conditions in the permit. Compliance with both requirements would cost the convention center project more than $1 million for additional housing loss mitigation.

During this time, the Council was reviewing its housing preservation policies. On July 15, 1985, the Council repealed the existing ordinance and enacted a new housing preservation ordinance. The new ordinance established citywide housing preservation policies to be applied to various properties, buildings, and developments throughout the city. The new ordinance requires, among other things, that owners of certain buildings provide replacement housing when demolishing or changing the use of those buildings. The new ordinance also requires notice to tenants, protection against evictions, and relocation assistance. Section 12 of the new ordinance sets forth several exceptions to the housing replacement requirement. Section 12(D) sets forth the exemption at issue:

D. The housing replacement requirement shall not apply to the demolition or change of use of any housing

unit in a building subject to and referenced in housing mitigation conditions included in a property use and development agreement or Council conditional use permit approved by the City prior to the effective date of [this ordinance].

Seattle Municipal Code 22.210.170(D).

No public hearing was held in connection with the effect of section 12(D) on the WSCTC conditional use permit.

The Coalition filed suit on July 1, 1985, alleging that the Council's enactment of section 12(D) was special legislation that improperly changed its prior quasi–judicial decision to grant the permit subject to conditions. Contending that the Council's action had denied its members due process and equal protection under the state and federal constitutions, the Coalition sought injunctive and declaratory relief, as well as writs of mandamus and prohibition. The trial court found that the Coalition had standing to assert its claims, but entered summary judgment for defendants on all issues.

The Coalition appeals the trial court's judgment. Respondents cross–appeal the trial court's finding that the Coalition had standing to assert equal protection claims. FSLIC has filed a motion to dismiss the Coalition's claims for lack of jurisdiction.

## DUE PROCESS CLAIMS

The Coalition argues that because the permit was unclear as to whether the housing replacement requirement in the old ordinance supplemented the permit, i.e., imposed additional requirements, the Council should have reopened quasi–judicial proceedings to clarify the permit. Instead the Council chose to pass section 12(D), exempting the project from the housing replacement requirements in the new ordinance, thereby limiting requirements to those in the permit, rather than the permit requirements plus the ordinance requirements. The Coalition concludes that the Council, in effect, legislatively changed its prior quasi–judicial decision granting the permit and improperly circumvented quasi–judicial due process requirements. The

Coalition asserts that conflicting statements made by council members after the permit was granted, along with the Council's findings and conclusions made before granting the permit, showed that the permit was unclear as to whether the housing replacement requirements in the old ordinance applied. We disagree.

■ The Coalition cannot rely upon the council members' statements to show the Council's intent. What may have been the intent of an individual legislator may not have been the intent of the legislative body that passed the act. *Johnson v. Continental West,* 99 Wn.2d 555, 560–61, 663 P.2d 482 (1983). Moreover, the Council's findings and conclusions do not show that the Council meant to include the old ordinance requirements within the permit. Instead, they show that the Council contemplated the general housing impacts of downtown development as a whole. City Council finding 17, for example, says that the City's housing preservation ordinance will replace housing lost as a result of "development induced by the Convention Center". Clerk's Papers, at 70. Similarly, City Council conclusion 6 states that the ordinance will partially mitigate the impacts of "Convention Center related development". Clerk's Papers, at 71. This evidence does not render the permit ambiguous. If the Council had intended to incorporate the old ordinance requirements, it could have done so. The Council did, for example, specifically include conditions requiring the WSCTC project to incorporate certain features of the State Energy Code and the Seattle Code for Energy Conservation. The Coalition has failed to show any evidence that the permit was intended to incorporate additional conditions. We hold that section 12(D) did not change or amend the permit.

The Coalition also argues that the Council improperly enacted section 12(D). The Coalition alleges that section 12(D) is a specific exemption of the WSCTC project which the Council should have enacted through quasi–judicial rather than legislative proceedings. The authorities cited by the Coalition do not support this argument.

In the first case relied on by the Coalition, the issue was the character of a city council's action denying a special use permit. *Pentagram Corp. v. Seattle,* 28 Wn. App. 219, 622 P.2d 892 (1981). The Council was authorized by the City's building code to review the permits in question. The court noted that the Council acted legislatively when adopting the enabling section of the building code, but quasi–judicially in reviewing the permit pursuant to the code. *Pentagram Corp.,* at 225. In *Lund v. Tumwater,* 2 Wn. App. 750, 472 P.2d 550 (1970) the action challenged was the granting of a special use permit. In *Woodcrest Invs. Corp. v. Skagit Cy.,* 39 Wn. App. 622, 694 P.2d 705 (1985) the challenged decision involved a rezone of a specific parcel of land. Both of these latter cases involved administrative acts and are not relevant to the present case. Here, the issue involves the Council's enactment of an overall housing ordinance that exempts certain entities from particular aspects of its coverage. The *Pentagram Corp.* reasoning suggests that, while the permit hearing was quasi judicial, the ordinance enactment was legislative. The Coalition admittedly does not challenge the permit proceedings.

▪ We conclude that the Council's enactment of section 12(D) was a legislative act. The test of what is a legislative and what is an administrative proposition is said to be whether the proposition is one to make new law or to execute law already in existence. 2 E. McQuillin, *Municipal Corporations* § 10.06 (3d rev. ed. 1979). A power to be exercised is legislative if it prescribes a new policy or plan. It is administrative if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it. *See Durocher v. King Cy.,* 80 Wn.2d 139, 152–53, 492 P.2d 547 (1972). The new ordinance is of a permanent and general nature. Section 12(D) is one of a series of exemptions expressed in the new ordinance, which is a new expression of the Council's housing policies. The Council's enactment of section 12(D) is thus an expression of new legislative policy.

Respondent FSLIC urges us to apply the 4–part test for

administrative action set out in *Williams v. Seattle Sch. Dist. 1*, 97 Wn.2d 215, 218–19, 643 P.2d 426 (1982). *Williams*, however, along with *Washington Fed'n of State Employees v. State Personnel Bd.*, 23 Wn. App. 142, 145–46, 594 P.2d 1375 (1979), were cases in which an administrative agency's action was challenged. The agencies in question had no legislative authority. *See Williams*, at 218; *Washington Fed'n of State Employees*, at 145. Here the Council had legislative powers and was acting in that capacity. We also find that the Council properly exercised its legislative power to enact section 12(D).

█ The State of Washington has granted its cities the power to regulate and restrict the location and use of buildings and land for residential and other purposes. RCW 35.63.080. Ordinances enacted by cities pursuant to this authority will be upheld as valid exercises of police power if they promote the public health, safety or welfare, and bear a reasonable and substantial relation to accomplishing the purpose pursued. *Duckworth v. Bonney Lk.*, 91 Wn.2d 19, 26–27, 586 P.2d 860 (1978).

The court must determine the public purpose and the relationship of the legislation to it. *Duckworth*, at 27. If the court can reasonably conceive of facts warranting the legislation, those facts will be presumed to exist. The court will also presume that the legislation was passed with reference to those facts. *Duckworth*, at 27. Once the court has established that a substantial relation exists between a city's ordinance and the public health, safety and welfare, it may overturn the city's exercise of legislative authority only for arbitrary and capricious conduct. *Duckworth*, at 34; *Lutz v. Longview*, 83 Wn.2d 566, 574–75, 520 P.2d 1374 (1974). The burden of proof rests on the challenging party, not on the city. *Duckworth*, at 34.

Applying the tests and presumptions used in the *Duckworth* case to the evidence presented here, this court finds that the Council intended to promote the public interest in preserving certain classes of housing in light of development through enacting the new ordinance. The Council

may also have considered the positive impacts of a public project such as the convention center, the extensive housing requirements already applied to it in the permit, and the effect of the new section 12(D) exemption. The Council could have concluded that the public housing interests would best be benefited by the regulatory scheme enacted, including section 12(D). The wisdom, necessity and policy of the ordinance is best left to the legislative body elected to make such decisions. *See Duckworth,* at 27. Section 12(D) is a valid legislative enactment.

## EQUAL PROTECTION

The Coalition argues that section 12(D) singles out a class of one to be exempted, the WSCTC project, and that it is not rationally related to the overall purpose of the ordinance.

An ordinance is presumed constitutional and the party challenging the classification has the heavy burden of overcoming this presumption. *Granat v. Keasler,* 99 Wn.2d 564, 568, 663 P.2d 830, *cert. denied,* 464 U.S. 1018, 78 L. Ed. 2d 723, 104 S. Ct. 549 (1983). An ordinance should not be declared unconstitutional unless it appears unconstitutional beyond a reasonable doubt. *State v. Maciolek,* 101 Wn.2d 259, 263, 676 P.2d 996 (1984).

At the threshold of any equal protection determination, the court must identify the appropriate standard of judicial review. *Paulson v. County of Pierce,* 99 Wn.2d 645, 652, 664 P.2d 1202, *appeal dismissed,* 464 U.S. 957, 78 L. Ed. 2d 331, 104 S. Ct. 386 (1983). In cases that involve neither a suspect classification, nor a fundamental right, this court applies the rational basis test. *Myrick v. Board of Pierce Cy. Comm'rs,* 102 Wn.2d 698, 701, 677 P.2d 140, 687 P.2d 1152 (1984). Under the rational basis test the court must determine: (1) whether the legislation applies alike to all members within the designated class; (2) whether there are reasonable grounds to distinguish between those within and those without the class; and (3) whether the classification has a rational relationship to the purpose of the legis-

lation. *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 835–36, 601 P.2d 936 (1979), *appeal dismissed,* 446 U.S. 979, 64 L. Ed. 2d 835, 100 S. Ct. 2958 (1980).

Section 12(D) satisfies the first part of the test because it applies equally to all members of the class it designates. Everyone who obtained conditional use permits containing specific housing mitigation provisions before enactment of the new ordinance is exempted from its housing replacement provisions.

The Coalition argues that section 12(D) fails to meet the second part of the rational basis test because it singles out the WSCTC project for special treatment. The Coalition contends that the City admitted that section 12(D) applied only to the WSCTC project. The Coalition relies on one council member's statement that the Council intended section 12(D) to apply only to the WSCTC project, and the city attorney's similar admission during trial. Neither of these statements, however, establishes that section 12(D) applies only to the WSCTC project. The individual council member's statement of his intent does not establish the full Council's intent. *See Johnson v. Continental West, supra* at 560–61. Moreover, the city attorney's statement during trial was his opinion and is not evidence of the Council's intent. *See* WPI 1.02 (counsel's remarks are not evidence); *see also Dodge v. Stencil,* 48 Wn.2d 619, 622, 296 P.2d 312 (1956) (admission by attorney to be binding upon client must be made for express purpose of dispensing with formal proof of some fact at trial).

Because the Coalition has presented no evidence that demonstrates that the section 12(D) exemption created a classification based on unreasonable grounds, the legislation satisfies the second part of the rational basis test.

Turning to the third part of the test, the parties agree that the Council's purpose in enacting the new ordinance was to protect low income residential housing from the harmful effects of development. The Coalition asserts that the section 12(D) exemption is not rationally related to this

purpose. Because this court may properly presume facts warranting the ordinance and that the Council passed the ordinance with reference to these facts, *see Duckworth,* at 27, we conclude that the Council could have rationally found that the section 12(D) exemption was necessary to avoid placing a heavier burden on projects already burdened by specifically tailored housing mitigation provisions and that section 12(D) would further the protection of low income housing as part of an overall regulatory scheme.

We, therefore, affirm the trial court's grant of summary judgment for respondents on the Coalition's equal protection claim. Because we hold that the Coalition has failed to establish an equal protection claim, we do not reach the question whether the Coalition had standing to assert this claim.

### SPECIAL LEGISLATION

We also reject the Coalition's argument that section 12(D) is special legislation prohibited by Const. art. 2, § 28(10). Special laws relate to particular persons or things, while general laws operate upon all persons or things constituting a class. *Libby, McNeill & Libby v. Ivarson,* 19 Wn.2d 723, 730, 144 P.2d 258 (1943). The class may consist of one person or thing so long as the law applies to all members of the class. *Libby, McNeill & Libby,* at 730. The Washington Constitution prohibits legislative bodies from enacting special laws that release any person or corporation from any existing indebtedness, liability or other obligation to the State. Const. art. 2, § 28(10); *see also State ex rel. Collier v. Yelle,* 9 Wn.2d 317, 330, 115 P.2d 373 (1941).

The Coalition argues that section 12(D) relieved the WSCTC project from the housing replacement obligations in the conditional use permit. However, as we found earlier, section 12(D) did not change or amend the permit. We need not decide whether section 12(D) was special legislation because it did not relieve WSCTC of any existing obligation and, therefore, does not violate Const. art. 2, § 28(10).

CONCLUSION

The Coalition has not established a due process or equal protection violation. Section 12(D) is a valid legislative enactment by the Council. Furthermore, because our disposition of this case does not affect FSLIC's receivership functions within the meaning of 12 U.S.C. § 1464(d)(6)(c), FSLIC's motion to dismiss the Coalition's claims is denied.

The trial court's summary judgment for respondents is affirmed.

DOLLIVER, C.J., and UTTER, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.