[No. 36927-0-I.   Division One.   August 5, 1996.]

JOYCE BARRY, *Appellant*, v. CANDICE C. JOHNS, ET AL., *Respondents*.

*Michael D. Brandt*, for appellant.
*George W. Cody* and *Cody, Hatch & Blanchard, Inc., P.S.,*
for respondents.

AGID, J. — The code of ethics for municipal officers, RCW ch. 42.23, prohibits them from having a beneficial interest in contracts entered into on the municipality's behalf. We are asked to decide whether a municipal contract that limits the liability of a non-profit organization's board members for discretionary decisions made in their official capacity gives those board members a beneficial interest in the contract. Because the code seeks only to regulate municipal officers' financial interests in contracts, not the type of non-pecuniary interest involved here, we conclude that it does not.

## FACTS

In 1992, the Mountlake Terrace police chief, representatives of the Mountlake Terrace Parks and Recreation Department and a group of community representatives created the Neutral Zone to provide volunteer support services to the city's at-risk youth. The Neutral Zone was housed in a facility provided by the Edmonds School District. In its early stages, it was funded, in part, by appropriations from the city budget. Because of the city's close affiliation with the project, two city council members, Candice Johns and Pat Cordova, were on the Neutral Zone's board of directors.

In 1993, the board of directors incorporated the Neutral Zone as a non-profit organization. The city, the school district and the Neutral Zone then drafted an agreement outlining their roles in the operation. The provision of the agreement at issue here, section 9, limits the liability of Neutral Zone board members for making or failing to make discretionary decisions when the board members are acting in their official capacity, unless the decision or failure constitutes gross negligence.

In 1994, the proposed agreement came before the Mountlake Terrace city council for consideration. At the time, Cordova and Johns were members of the city council and were also serving as unpaid directors of the Neutral Zone. Before the vote, Councilmember Joyce Barry challenged Johns' and Cordova's right to participate, contending their involvement in the Neutral Zone presented a conflict of interest under the code of ethics. Johns and Cordova disagreed and voted to adopt the measure, which passed by a vote of four to three. Barry sought a writ of mandamus and declaratory relief to void the agreement. The trial court granted Johns and Cordova's cross-motion for summary judgment and dismissed Barry's complaint. Barry appeals.

## DISCUSSION

RCW 42.23.030 prohibits a municipal officer from making contracts on the municipality's behalf that give the officer a beneficial interest in the contract:

> No municipal officer shall be beneficially interested, directly or indirectly, in any contract which may be made by, through or under the supervision of such officer, in whole or in part, or which may be made for the benefit of his or her office, or accept, directly or indirectly, any compensation, gratuity or reward in connection with such contract from any other person beneficially interested therein.

Contracts made in violation of the statute are void, and any officer violating the provisions of the statute is liable

to the municipality for a $300 fine. RCW 42.23.050. Barry contends Johns and Cordova were "beneficially interested" in the contract between Mountlake Terrace and the Neutral Zone within the meaning of RCW ch. 42.23 because it limited their liability for decisions made in their capacity as Neutral Zone board members.

■ RCW ch. 42.23 does not define beneficial interest. Johns and Cordova submit that the term is limited to financial interests. Barry argues that it should be read broadly to prohibit municipal officers from approving contracts that provide them any benefit, financial or otherwise. Read as a whole, the code of ethics clearly supports Johns and Cordova's interpretation. Although the code does not define a beneficial interest, its list of the types of beneficial interests that are not prohibited by the code is instructive. These exceptions include contracts for utility services, publication of legal notices required by law and employment contracts for school bus drivers and other school district employees. *See* RCW 42.23.030(1)-(10). Because the exceptions to the general rule prohibiting a municipal officer from having a beneficial interest in certain municipal contracts all involve business transactions or employment matters, we conclude the Legislature intended the term beneficial interest under the general rule to encompass the same thing. We conclude, therefore, that RCW 42.23.030 applies only to municipal contracts involving business transactions, employment matters and other financial interests and cannot be read to apply to the contract here, which conferred no financial benefit on Johns or Cordova.[1]

■ Section 9 of the agreement did not confer even a potential financial benefit on Johns and Cordova because state law extends them the same benefit. Section 9 provides:

Pursuant to RCW 4.24.264, the Neutral Zone board

---

[1]As further support for this reading, we note that the statutory counterpart for state officers and employees, RCW 42.52.030, which is worded similarly to RCW 42.23.030, is entitled "*Financial* interests in transactions."

members shall not be individually liable for any discretionary decision or failure to make a discretionary decision within his or her official capacity as a board member unless the decision or failure to decide constitutes gross negligence.

Like section 9, RCW 4.24.264 provides that members of board of directors and officers of nonprofit corporations are not individually liable for any discretionary decision or failure to make a discretionary decision within his or her official capacity unless it constitutes gross negligence. Because the two provisions extend the same protection from liability to board members of non-profit organizations, Johns and Cordova did not receive any benefit from the agreement with the Neutral Zone that they did not already have under state law.

Barry's proposed reading of the statute is also seriously at odds with the Legislature's declared purpose which is to regulate municipal officers' involvement in some municipal contracts from which they could benefit financially and, at the same time, enlarging a municipality's pool of potential officeholders:

> It is the purpose and intent of this chapter to revise and make uniform the laws of this state *concerning the transaction of business* by municipal officers, as defined in this act,[] in conflict with the proper performance of their duties in the public interest; and to promote the efficiency of local government by prohibiting certain instances and areas of conflict while at the same time sanctioning, under sufficient controls, certain other instances and areas of conflict wherein the private interest of the municipal officer is deemed to be only remote, to the end that, without sacrificing necessary public responsibility and enforceability in areas of significant and clearly conflicting interests, the selection of municipal officers may be made from a wider group of responsible citizens of the communities which they are called upon to serve.

RCW 42.23.010 (italics ours).

Barry's reading of the statute would produce the opposite effect. In the case before us, for example, she would require that Johns and Cordova either resign their posi-

tions at the Neutral Zone, depriving the organization and the community of two active volunteers, or refrain from voting on the Neutral Zone agreement, thereby compromising their ability to influence an important community issue. The fault with Barry's approach is evident when carried to its logical extreme. She would give voters the choice of either electing active members of the community who would have to resign upon taking office from any community organizations the municipality works with or electing less involved members of the community, who would not have the conflict of interest she believes exists here. In our view, neither option is required by the law or common sense.

At oral argument, Barry's counsel argued passionately that the statute's true aim is to prevent municipal officers with outside agendas from unduly influencing the municipality's relationship with organizations they favor or causes they advocate. He warned that this type of entanglement subverts the democratic process because one or two officers can dictate the council's actions by directing the municipality into contracts with selected organizations, thereby overriding the popular will. While we unquestionably share Barry's concern for the integrity of our democratic system, we cannot agree that it will be threatened if elected municipal officers are allowed to influence decisions that will benefit one community organization over another. On the contrary, in a representative democracy, we elect our legislators precisely to carry out agendas and promote causes with full knowledge that "their own personal predilections and preconceptions" will affect their decisions. *Evergreen Sch. Dist. 114 v. Clark County Comm. on Sch. Dist. Org.*, 27 Wn. App. 826, 833, 621 P.2d 770 (1980). As long as these predilections do not lead them to line their pockets or otherwise abuse their offices, we leave the wisdom of their choices to the voters. If the voters do not like their representatives' agendas or voting decisions, they are free to vote them out of office.

■ Barry further contends that Johns' and Cordova's

participation in the vote to approve the agreement violated the appearance of fairness doctrine. Because Barry did not raise this issue below, we do not address it further except to note that the appearance of fairness doctrine does not apply to legislative actions. *See Zehring v. City of Bellevue*, 99 Wn.2d 488, 494, 663 P.2d 823 (1983).

The summary judgment is affirmed.

COLEMAN and BECKER, JJ., concur.