[No. 21838–7–I. Division One. November 13, 1989.]

TEKOA CONSTRUCTION, INC., ET AL, *Appellants*, v. THE CITY
OF SEATTLE, *Respondent*.

*Richard B. Sanders,* for appellants.

*Douglas N. Jewett, City Attorney,* and *Gordon F. Crandall, Senior Assistant,* for respondent.

REVELLE, J.*—Appellants appeal the trial court's order granting summary judgment in favor of the City and dismissing their complaint with prejudice. We affirm.

In 1982, a new land use code was adopted in Seattle liberalizing zoning requirements. The new code permitted development of any number of substandard lots, regardless of common ownership of adjacent lots.[1] The purpose of liberalizing the code was to encourage infill development of housing on vacant lots in single–family zones.[2] The Department of Construction and Land Use (DCLU), in administering the 1982 land use code, interpreted this change to mean that existing housing could be demolished in order to

---

*Judge George H. Revelle is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1] A lot which does not meet the minimum lot area requirement is called a substandard lot.

[2] "Infill zoning" is a technique for filling in scattered vacant parcels which are still in existence after the development of an area. The vacant parcels are left over

uncover two platted lots for development of two residences in place of one. Citizens and community groups objected, contending that the demolition and redevelopment of developed lots at such increased density was adversely changing the character and density of established residential neighborhoods and was not what the city council had intended.

In response to these objections, the DCLU proposed an amendment which would stop demolition of existing housing for purposes of developing multiple, contiguous, undersized lots. In a memorandum to the city council, the director of the DCLU stated:

> In response to the request of the Mayor and City Council to evaluate the impacts of small lot development on Seattle's single family residential neighborhoods, the Department of Construction and Land Use (DCLU) is proposing to amend the Land Use Code, Section 23.44.10B. The purpose of the proposed amendment is to stop demolition of existing housing for purposes of developing multiple contiguous undersized lots. Because of negative impacts caused by housing demolition and density increases on neighborhoods with undersized lots, DCLU believes it is necessary to prohibit the use of the lot size exception for new construction, when an existing house developed on more than one lot is demolished. The proposed amendment would preserve and reinforce the existing housing pattern in residential neighborhoods, because new structures replacing old would have to be built on the same number of lots used by the old.

After a public hearing, the city council adopted ordinance 113216, substantially in accord with the DCLU recommendation. Ordinance 113216 became effective on January 18, 1987. The preamble to the ordinance reflects DCLU's stated intentions.

> AN ORDINANCE relating to land use and zoning; amending Section 23.44.010 of the Seattle Municipal Code to limit the substandard lot area exception to exclude lots made vacant by demolition of existing housing.
> WHEREAS, prior to 1953 the City of Seattle did not regulate the size of building lots; and

---

because they are too small to meet zoning standards for new construction. 2 P. Rohan, *Zoning and Land Use Controls* § 12.01[4] (1988).

WHEREAS, in 1953 the City adopted Ordinance 82114 which established a minimum lot size of 5,000 square feet for the First Residence zones, which were forerunners of the Single Family zones established in 1957 and 1982; and

WHEREAS, prior to 1982 the Zoning Ordinance (86300) permitted only one previously platted substandard and vacant lot to be developed; and

WHEREAS, the 1982 Land Use Code continued the same three minimum lot sizes as contained in the 1957 Zoning Ordinance and liberalized the substandard lot exceptions to encourage single family housing infill development on vacant land in single family zones even where contiguous lots in common ownership were also vacant; and

WHEREAS, the code provision in the 1982 ordinance for substandard lot exceptions has been misinterpreted to permit demolition of single family homes in order to create and develop two or more substandard lots; and

WHEREAS, it is still the intention of the City Council to encourage infill single family housing development on vacant land in single family zones, including development of vacant substandard lots, while maintaining the physical character of single family residential zones and encouraging rehabilitation of existing housing as provided in the adopted Single Family Policies SMC 23.16.002.

The ordinance continues to allow development of vacant substandard lots, in some cases even those held in common ownership with other substandard lots. However, the ordinance prohibits development of substandard lots in common ownership when the lot is needed to satisfy the least restrictive of lot area, lot coverage, setback, or yard requirements. The ordinance expressly provides that "removal of all or any part of a principal structure or destruction by fire or act of nature on or after the effective date of this Ordinance, shall not qualify the lot for the minimum lot area exception . . ." Ordinance 113216.

On February 18, 1987, appellants filed a complaint for declaratory relief, civil rights violation, injunction, and damages, claiming that ordinance 113216 was unconstitutional because it curtailed or eliminated the right of property owners to develop contiguously owned lots where the land area falls below a prescribed minimum. Appellants sought an injunction to prevent the City from enforcing the ordinance, for a declaratory judgment that the ordinance

violates the United States Constitution, and for compensatory, exemplary and punitive damages, attorney fees, and costs. The City denied the material allegations of the complaint and alleged affirmatively that the ordinance was a reasonable and proper exercise of the City's police power which applied equally upon all affected by the ordinance, that the complaint failed to state a cause of action, and that appellants had no vested right to develop their property in accordance with previous platting which did not conform to current minimum lot area regulations.

Both parties moved for summary judgment. On February 22, 1988, an order was entered granting the City's motion for summary judgment and denying appellants' motion for summary judgment. Appellants' action was dismissed with prejudice and with costs. This appeal followed.

Appellants contend that the trial court erred by denying their motion for summary judgment and dismissing their complaint with prejudice, claiming that ordinance 113216 (1) exceeds the reasonable police power of the City of Seattle; (2) constitutes a taking of property without due process; (3) violates their right to equal protection; and (4) constitutes a regulatory taking of private property without just compensation.

When reviewing a summary judgment, the appellate court engages in the same inquiry as the trial court. *Hostetler v. Ward,* 41 Wn. App. 343, 346, 704 P.2d 1193 (1985), *review denied,* 106 Wn.2d 1004 (1986). Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The court must consider all the facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

In a summary judgment motion, the initial burden is on the moving party to show that there is no genuine issue as

to a fact which could influence the outcome at trial. *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). Once the moving party has met this burden, however, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Graves v. P.J. Taggares Co.,* 94 Wn.2d 298, 302, 616 P.2d 1223 (1980). The nonmoving party cannot simply rest upon the allegations of his pleadings; he must affirmatively present the factual evidence upon which he relies. CR 56(e); *Boardman v. Dorsett,* 38 Wn. App. 338, 340, 685 P.2d 615, *review denied,* 103 Wn.2d 1006 (1984).

Appellants contend that they should have a vested right to develop previously platted lots in accordance with minimum area requirements in effect at the time of platting. We disagree.

In Washington, an approved plat is immune from zoning changes for a period of 5 years from the date of filing the final plat. RCW 58.17.170. However, after the 5–year immunity period has run, the owners of contiguous lots could be required to comply with new zoning regulations. R. Settle, *Washington Land Use and Environmental Law and Practice* 119 (1983). Appellants argue that RCW 58.17.170 was first enacted in 1969, long after the "subject property" was platted, and that, therefore, ordinance 113216 is a "retroactive legislative fiat destroying the previously established lawful use of a platted lot as a separate building site." This argument is without merit.

RCW 58.17 is inapplicable to sales of lots prior to August 11, 1969. *Gilmore v. Hershaw,* 83 Wn.2d 701, 705, 521 P.2d 934 (1974). In the instant case, there is no evidence in the record as to when the subject property was sold to appellants other than the property owned by Robert Hale, which was purchased in March 1986. Moreover, appellants' argument assumes that they have vested rights. The general rule in this state is that "a landowner obtains a vested right to develop land when he or she makes a timely and complete building permit application that complies with the applicable zoning and building ordinances in effect

on the date of the application." *Norco Constr., Inc. v. King Cy.,* 97 Wn.2d 680, 684, 649 P.2d 103 (1982). In the present case, there is no evidence that appellants made an application for a building permit. Therefore, appellants have not obtained vested rights.

## DUE PROCESS CLAIM

■ The City of Seattle has the power to regulate and restrict the location and use of buildings and land for residential and other purposes. RCW 35.63.080. Ordinances that are enacted by the City of Seattle pursuant to this authority will be upheld as valid exercises of police power if they promote the public health, safety or welfare, and bear a reasonable and substantial relation to accomplishing the purpose pursued. *Duckworth v. Bonney Lk.,* 91 Wn.2d 19, 26–27, 586 P.2d 860 (1978).

The court must determine the public purpose and the relationship of the legislation to it. *Duckworth,* at 27. If the court can reasonably conceive of a state of facts warranting the legislation, those facts will be presumed to exist. Moreover, the court will presume that the legislation was passed with reference to those facts. *Duckworth,* at 27. "A legislative enactment is presumed constitutional and the party challenging it bears the burden of proving it unconstitutional beyond a reasonable doubt." *State v. Brayman,* 110 Wn.2d 183, 193, 751 P.2d 294 (1988).

Applying the tests and presumptions used in *Duckworth* to the evidence presented in the instant case, it is clear that the city council intended (1) to promote the public interest in encouraging infill housing, (2) to maintain the physical character of single–family residential neighborhoods, and (3) to encourage rehabilitation of existing housing. Ordinance 113216 bears a reasonable and substantial relation to accomplishing these purposes.

■ Appellants contend that the only purpose of the ordinance is to encourage infill housing and that the ordinance does not satisfy this objective. Appellants support their argument by contending that one city council member

stated in his deposition that he did not believe that the "ordinance—that its consequence will be to increase the amount of infill development as compared to what DCLU was interpreting the old ordinance to do . . ." Appellants cannot rely upon one council member's statement to show the council's intent. The intent of an individual legislator may not have been the intent of the legislative body that passed the act. *Convention Ctr. Coalition v. Seattle,* 107 Wn.2d 370, 375, 730 P.2d 636 (1986).

■ It is clear that the purpose of the ordinance is not as narrow as appellants contend. "The 'general purpose' of zoning is to stabilize uses, conserve property values, preserve neighborhood characters, and promote orderly growth and development." *Duckworth,* at 28. Ordinance 113216 was enacted to achieve this general purpose. "The wisdom, necessity and policy of the ordinance is best left to the legislative body elected to make such decisions." *Convention Ctr.,* at 378. Ordinance 113216 is a valid legislative enactment.

### Equal Protection

■ Appellants contend, without analysis, that the equal protection violation is rather straightforward. In the instant case, neither a suspect classification nor a fundamental right is involved; therefore, this court applies the rational basis test. *Convention Ctr.,* at 378. Under that test, the court must determine:

(1) whether the legislation applies alike to all members within the designated class; (2) whether there are reasonable grounds to distinguish between those within and those without the class; and (3) whether the classification has a rational relationship to the purpose of the legislation.

*Convention Ctr.,* at 378–79.

Here, appellants contend that there is no reason to prohibit development on a commonly held lot while allowing it on one separately owned. Common ownership is not the only basis for regulation. The basis of maintaining the physical character of single family residential zones and

encouraging rehabilitation of existing housing is an adequate basis. Pursuant to ordinance 113216, adjacent substandard lots can be developed independently unless the lot is needed to satisfy legal requirements of an adjacent lot in common ownership or if the lots in common ownership are already developed with a principal structure. Ordinance 113216. Under the rational basis test, the ordinance does not violate equal protection.

## TAKING

■ Appellants next contend that ordinance 113216 constitutes a regulatory taking. We disagree. Appellants challenge the ordinance on its face and as applied. "In a facial challenge, the property owner must show that the challenged regulation denied all economically viable use of his or her property." *Orion Corp. v. State,* 109 Wn.2d 621, 656, 747 P.2d 1062 (1987), *cert. denied,* 486 U.S. 1022, 100 L. Ed. 2d 227, 108 S. Ct. 1996 (1988). In the instant case, appellants have not demonstrated that they have been denied all economically viable use of their property. Thus, appellants' facial challenge is without merit. Appellants' contention that ordinance 113216 constitutes a taking as applied is also without merit.

■ Appellants contend that the ordinance is unconstitutional as applied to the property of appellant R/L Associates, Inc. We disagree. The evidence in the record does not establish that the ordinance caused R/L Associates a "significant economic deprivation." *Orion,* at 663. There is no evidence that R/L Associates' "'fundamental attributes of ownership'" have been extinguished.[3] *Orion,* at 664. Nor has there been a showing that R/L Associates has been denied all reasonable use of its land. Moreover, R/L Associates' contention that enforcement of the ordinance will destroy investment backed expectations is also without merit. R/L Associates' expectations were based upon the assumption it had vested rights. However, we have already

---

[3]Appellants' fundamental attributes of ownership include rights to possess, exclude others from, and transfer ownership. *See Orion,* at 664.

held that appellants had no vested rights. *See* Settle, *Regulatory Taking Doctrine in Washington: Now You See It, Now You Don't,* 12 U. Puget Sound Law Rev. 339 (1989).

The trial court's order granting summary judgment is affirmed.

COLEMAN, C.J., and WEBSTER, J., concur.

Review denied at 114 Wn.2d 1005 (1990).