[No. 33150-7-I.    Division One.    April 18, 1994.]

IVOR JONES, ET AL, *Appellants*, v. KING COUNTY, ET AL, *Respondents*.

*John D. Blankenship* and *Montgomery, Purdue, Blankenship & Austin,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Charles Maduell* and *H. Kevin Wright, Deputies,* for respondents.

KENNEDY, J. — Ivor Jones, John Jones and Kathryn Jones (hereinafter referred to collectively as Jones) appeal a summary judgment order dismissing their suit against King County. Jones alleges that the County, as part of an area rezoning effort, violated Jones' procedural and substantive due process rights, and took property without just compensation. Jones also contends that the legislative process changing the zoning of the property was defective, so that the Jones property actually retains its urban zoning. Finding that the county council did change Jones' zoning to AR-5, and finding no merit in Jones' other contentions, we affirm.

## FACTS

In March 1988, King County launched the Soos Creek Community Plan and Area Zoning Update (SCCP), appoint-

ing a 13-member citizens advisory committee to assist the planning staff in preparing a proposed plan. The Soos Creek Community is one of 13 large community-planning areas King County established to help in updating the countywide comprehensive plan. Jones owns two parcels of land totaling approximately 129 acres located north of and adjacent to the Cedar River, which is in the northernmost portion of the Soos Creek Community. These two parcels are separated by a narrow strip of land owned by Naomi Reimer, and lie in Maple Valley, north of Maple Valley Highway.

Jones' land was zoned SE (Suburban Estates) by the area zoning implementing the 1985 comprehensive plan, allowing one residence for every 35,000 square feet.[1] Jones purchased the land with plans to take advantage of this zoning by developing the property later. The land consists mainly of forest and pastures. Jones uses the property as a residence and horse ranch.

From April 1988 through September 1988, the citizens advisory committee and the County's planning staff met approximately 39 times to formulate proposed policies and establish a proposed land use strategy for the Soos Creek Community. These meetings were publicized and well attended by the public. The advisory committee conducted six community meetings designed to gauge the public response to the committee's ideas.[2] In August of the same year, the committee recommended downzoning Maple Valley from SE to AR-10, i.e., from urban to rural, with one lot for every 10 acres, excluding those areas with existing sewer systems.

The County's planning staff prepared a Soos Creek plan in which the Jones property was recommended for AR-10 zoning. This plan was sent to the county council, along with drafts of proposed ordinances adopting the plan and amend-

---

[1] One acre equals 43,560 square feet.

[2] During this time, the City of Renton expressed concern about Maple Valley's urban zoning, since the City's sole aquifer is located in the western portion of the Valley. The record reflects and the parties agree in their briefs that the Jones property does not affect the City of Renton's aquifer.

ing the comprehensive plan. The council referred the matter to a committee. The full council then held a public hearing in July 1991, to inform affected property owners about the proposed changes and to solicit from property owners written requests for changes to the proposed zoning. These requests were to be submitted not later than September 12, 1991. Notice of this meeting was mailed to the 33,000 property owners in the Soos Creek area. On September 12, 1991, Jones submitted an area zoning request for each of Jones' parcels, asking to retain the SE zoning.

The committee formed by the council reviewed the proposed plan and ordinances during several meetings between July and October of 1991. At these meetings the committee occasionally accepted oral comments and accepted all written comments from the public. The committee held two community meetings in July 1991, to hear public comment. At a September 17, 1991, committee meeting Jones asked that the Jones property retain its SE zoning.

Approximately 2 weeks later, in early October 1991, the council chair created a panel of three council members to take over and expedite the work of the committee, in hopes that the planning and rezoning process could be completed before the interim zoning in Soos Creek expired. The panel held a community meeting on October 11, 1991, and an additional seven meetings through December 15, 1991. At an October 17 meeting the panel recommended zoning the Jones property, and all property north of Maple Valley Highway, as AR-5 (rural with one residence per 5 acres). Ultimately, however, after a December 4, 1991, meeting the panel recommended that the Jones property be the only property north of the highway allowed to retain urban zoning. The panel recommended an SC (suburban clustering) classification for the Jones property (one home per 35,000 square feet but with suburban clustering).

On December 16, 1991, the full county council held a public hearing on the proposed ordinances, including the panel's proposed area zoning and comprehensive plan changes. Notice of this hearing was mailed to all 33,000

property owners in the Soos Creek area. The hearing continued into the next day, December 17, 1991. On that day, the council passed ordinance 10197 adopting the SCCP and area zoning changes, and ordinance 10198 adopting amendments to the County's comprehensive plan, making it consistent with the Soos Creek plan.[3]

On January 16, 1992, Jones filed suit, challenging the constitutionality of ordinance 10197, and arguing that, as adopted, ordinance 10197 actually zoned the Jones property SC.

By the end of January 1992, the council had discovered inconsistencies and poor draftsmanship within ordinance 10197. A "correction ordinance" was passed by the council in April 1992. Ordinance 10336 "clarified" the council's position that all land north of Maple Valley Highway should be zoned AR-5. A hearing was held on this ordinance before its adoption. Notice of this hearing and of the proposed corrections was published in two newspapers, and property owners were sent a copy of the meeting agenda. The corrections explicitly adopted AR-5 zoning for the Jones property.[4]

Both parties moved for summary judgment. The trial court denied Jones' motion and granted the County's motion, thereby dismissing Jones' suit. Jones sought direct review in the Supreme Court of Washington, which transferred the appeal to this court.

DISCUSSION

I

Area Zoning and Legislative Due Process

The King County Code (KCC) mandates that the area zoning used to implement the policies of community plans like the SCCP be proposed at the same time as the community plan itself is proposed. KCC 20.16.100. Thus, the proposed amendments to a community plan progress simul-

---

[3]The relevant provisions and amendments in ordinances 10197 and 10198 will be detailed and discussed *infra*.

[4]Clearly, all of the surrounding properties had already been zoned AR-5 by ordinance 10197.

taneously with proposals for area zoning. Jones argues that amending both the SCCP and area zoning simultaneously violates the Growth Management Act (GMA),[5] the King County Code, and procedural due process.

■ Jones contends that landowners cannot participate effectively in this type of combined process because they need a substantial amount of time to review the comprehensive plan before they can give input about what zoning would be consistent with the plan. But here, the landowners had a sufficient opportunity to respond to the combined process. In fact, it is undisputed that Jones had a substantial amount of time throughout the whole process of examining the proposed changes to the comprehensive plan and the proposed zoning changes to give both oral and written comments. Jones knew what environmental constraints were guiding the planners' recommendations and also knew what level of zoning, AR-10, the planners intended to propose. Thus, Jones was able to show why the Jones property would sustain SE or SC zoning. That Jones did not ultimately succeed before the council does not amount to a denial of procedural due process.

## King County Code

The King County Code does not support Jones' contention. Jones relies on KCC 20.24.020, which created the Office of Zoning and Subdivision Examiner. One of the purposes of this chapter was to satisfy the need to "separate the application of regulatory controls to the land from planning". KCC 20.24.010(A). Nothing in this provision states that area zoning should not occur simultaneously with comprehensive plan amendments, or that the Office of Zoning and Subdivision Examiner controls the area zoning process.

---

[5]The GMA requires that any county or city zoning under applicable provisions of the GMA "shall perform its activities and make capital budget decisions in conformity with the comprehensive plan." Former RCW 36.70A.120. This provision did not become effective until June 1993. Jones argues that this provision should nevertheless be applied as it expresses current state policy. We decline to apply the GMA to actions taken a year and a half before its effective date.

## Quasi-Judicial Procedural Due Process

Jones contends that as the County rezoned the property, it was required to afford Jones the due process attending a quasi-judicial proceeding.[6]

RCW 42.36.010 defines what local land use decisions should and should not be considered quasi judicial:

> Quasi-judicial actions of local decision-making bodies are those actions of the legislative body, planning commission, hearing examiner, zoning adjuster, board of adjustment, or boards which determine the legal rights, duties, or privileges of specific parties in a hearing or other contested case proceeding. *Quasi-judicial actions do not include the legislative actions adopting, amending, or revising comprehensive, community, or neighborhood plans or other land use planning documents or the adoption of area-wide zoning ordinances or the adoption of a zoning amendment that is of area-wide significance.*

(Italics ours.)

▮ The Washington Supreme Court recently interpreted RCW 42.36.010 in the context of a zoning amendment. *See Raynes v. Leavenworth*, 118 Wn.2d 237, 821 P.2d 1204 (1992). In *Raynes*, the appellants alleged that their due process rights were violated by the town of Leavenworth's decision to amend its zoning ordinance to allow for recreational vehicle parks in its tourism/commercial district. The court held that RCW 42.36.010 defined this act as legislative because it encompassed the entire tourism/commercial district, as opposed to a specific tract of land. *Raynes*, at 247-48.

Raynes had argued that the zoning clearly affected only two parcels of land within the district, as these were the only two which could sustain an RV park. Thus, the parties were readily identifiable. *Raynes*, at 248. The *Raynes* court disagreed, stating: "The fact that the solution chosen has a high impact on a few people does not alter the fundamental nature of the decision." *Raynes*, at 249.

Jones' argument mirrors Raynes' argument.[7] Jones argues that the County, by asking landowners to submit rezone

---

[6]It is undisputed that Jones was not afforded quasi-judicial due process.

[7]Jones argues that under *Fleming v. Tacoma*, 81 Wn.2d 292, 502 P.2d 327 (1972), the process by which lands are classified or reclassified is always adjudica-

requests as a means of objecting to the proposed plan and area rezone, effectively created an adversarial process with identifiable parties. Under *Raynes* and RCW 42.36.010, however, the County's actions were clearly areawide zoning and comprehensive plan amendments. Thus, they were legislative actions. The method chosen by the council to acquire input from property owners allowed the owners to specifically discuss their own properties. This does not, however, transform the event into a quasi-judicial proceeding.

> Although legislative decisions may appear adjudicatory when groups focus on how the particular decisions will affect their individual rights, all policy decisions begin with the consideration and balancing of individual rights.

*Raynes*, at 249 (citing *Harris v. Hornbaker*, 98 Wn.2d 650, 659, 658 P.2d 1219 (1983)).[8]

## II

### The Effect of Ordinance 10197

Jones contends that ordinance 10197 actually zoned the Jones property SC. We disagree.

Ordinance 10197 attempts to accomplish two things. First, in section one it purports to amend the SCCP to augment and amplify the comprehensive plan. These changes are said to appear in appendix A to the ordinance. Second, section three purports to adopt the SCCP area zoning, as attached as appendix B to the ordinance.

The ordinance must be interpreted to effect the council's intent. *Condit v. Lewis Refrigeration Co.*, 101 Wn.2d 106, 110, 676 P.2d 466 (1984). Every provision must be read in relation to every other provision so as to harmonize the ordinance's construction. *Addleman v. Board of Prison Terms*

---

tory, requiring quasi-judicial due process. However, as regards the adoption of comprehensive plans and area zoning, *Fleming* has been overruled. *Raynes*, 118 Wn.2d at 247.

[8]Jones also argues that *Smith v. Skagit Cy.*, 75 Wn.2d 715, 453 P.2d 832 (1969) shows that the legislative hearings held by the King County Council were procedurally unfair. *Smith* adopted the appearance of fairness doctrine. *Smith*, at 743. Under subsequent case law and statutes, however, the appearance of fairness doctrine does not apply to the instant case, making *Smith* inapposite.

*& Paroles*, 107 Wn.2d 503, 509, 730 P.2d 1327 (1986). A statute should not be interpreted so as to render any portion of it superfluous. *Avlonitis v. Seattle Dist. Court*, 97 Wn.2d 131, 138, 641 P.2d 169, 646 P.2d 128 (1982).

Interpreting ordinance 10197 is particularly difficult because the council merely appended the panel's recommendations as the text of the ordinance, even though the panel recommendations were not all adopted. Furthermore, despite the ordinance's references to attached appendices A and B, the appended panel recommendations appear in one amorphous lump.

Despite this, we find that the ordinance and the process used to pass it evidence the council's intent to adopt AR-5 zoning for the whole of Maple Valley, including the Jones property.[9] The ordinance stated at the outset that it was amending both the community plan and the area zoning. Thus, when the Council passed Amendment 12, which states that all of Maple Valley north of Maple Valley Highway should be redesignated from urban to rural, the Council intended to change Jones' zoning to be consistent with the SCCP. In this combined process of zoning and planning amendments, a change to the plan meant a change to the zoning.[10]

This was the way the process worked for all of the properties affected by the SCCP. This was how all of the properties surrounding Jones were redesignated to AR-5. This is why a map appears after amendment 21 (the amendment is not directly related to Jones' area) on which the Jones property is given an AR-5 designation. Finally, this is presumably why Jones filed suit after the ordinance passed; it was clear that the council's intention was to change the status of Jones' zoning.

---

[9]We agree with Jones that interlineation and deletions made after the ordinance passed should be disregarded. Thus, the asterisk with the notation "Delete as a result of Amendment 12 regarding Maple Valley R-18", and the "AREA ZONING REQUEST INDEX", both of which were postpassage additions, should be ignored for purposes of our review.

[10]Indeed, ordinance 10198, which amended the comprehensive plan, states that the comprehensive plan will be implemented by the SCCP ordinance, *i.e.*, ordinance 10197.

Jones correctly indicates that a note on the ordinance states that the panel recommended SC zoning for the Jones property. Also, several pages later the ordinance contains a table entitled "AREA REZONES APPROVED OR AP-PROVED AS MODIFIED BY SOOS CREEK PANEL ON DECEMBER 5, 1991". The Jones property shows the panel's recommendation of SC zoning. These portions of the statute, however, are inconsistent with amendment 12. It is clear from the context of the ordinance and the process adopting it that these portions of the statute were portions of the panel recommendation that the council rejected, but failed to delete.[11]

Because the council adopted AR-5 zoning in ordinance 10197, ordinance 10336 was, in fact, a technical corrections ordinance. It added the words "and zoned AR-5" to amendment 12 merely to clarify what had been the legislative intent.

Jones contends that ordinance 10336 is invalid because the council failed to provide mailed notice of its proposal to landowners. As this was a technical correction ordinance, Jones was not entitled to mailed notice. KCC 1.24.100.

## III

### Takings and Substantive Due Process
*Takings Claim*

Jones argues that ordinance 10197 constitutes a taking without compensation, in that it confers a public benefit by preserving the Renton aquifer.

■ The Washington Supreme Court recently reconfigured the analysis to be applied to takings claims in light of the United States Supreme Court's decision in *Lucas v. South Carolina Coastal Coun.*, 505; U.S. 1003, 120 L. Ed. 2d 798, 112 S. Ct. 2886 (1992). *See Guimont v. Clarke*, 121 Wn.2d 586, 854 P.2d 1 (1993). Where a land use decision is challenged

---

[11]Jones argues that the opinions of individual legislators are not instructive of legislative intent. *State v. Leek*, 26 Wn. App. 651, 657, 614 P.2d 209 (court refused to consider affidavits of two legislators given 5 years after the statute passed) (citing 2A C. Dallas Sands, *Statutory Construction* § 48.13, at 216 (4th ed. 1973), *review denied*, 94 Wn.2d 1022 (1980). We do not rely on the declarations of individual council members in reaching our decision.

under both takings and substantive due process, we must first examine the takings issue. *Guimont*, at 594.

■ A takings claim must pass two threshold questions. First, did the ordinance derogate any fundamental attribute of property ownership, including the right to possess, to exclude others, or to dispose of property? *Guimont*, at 601-02. After *Lucas*, we must also decide at this stage whether the ordinance eliminates the right to make some economically viable use of the property, *i.e.*, does it create a "physical invasion" of the property, or a "total taking" by destroying all economically viable use?[12] *Guimont*, at 601-02.

If the claimant does not meet any part of the first threshold question, then we address whether the ordinance merely protects the public interest in "health, safety, the environment or the fiscal integrity of an area", or whether it goes further by requiring that the regulated party confer a public benefit. *Guimont*, at 603 (citing *Robinson v. Seattle*, 119 Wn.2d 34, 49, 830 P.2d 318, *cert. denied*, 506 U.S. 1028, 121 L. Ed. 2d 598, 113 S. Ct. 676 (1992)); *Sintra, Inc. v. Seattle*, 119 Wn.2d 1, 14-15, 829 P.2d 765, *cert. denied sub nom. Robinson v. Seattle*, 506 U.S. 1028, 121 L. Ed. 2d 598, 113 S. Ct. 676 (1992). If the claimant fails to meet the second threshold question as well, then we proceed to the substantive due process claim. *Guimont*, at 594.[13]

Jones still maintains all the rights of ownership and can still develop the land, even if not to the extent previously desired. Thus, the property still has economic viability. Jones argues only that the rural zoning forces Jones to confer upon the public the benefit of preserving the Renton

---

[12]In *Lucas*, the Supreme Court held that where South Carolina forbade Lucas to build any permanent structures on two coastal lots the state had deprived him of all economic uses of his property, and had, therefore, made a taking for which Lucas was entitled to compensation. *Lucas*, 120 L. Ed. 2d at 823.

[13]In *Guimont*, the court considered the Mobile Home Relocation Assistance Act. Under this act, mobile home park owners were required to provide financial assistance to low income tenants forced to move by the owner's decision to close the park. *Guimont*, at 592. The court, analyzing only the federal Constitution, found no taking because park owners were not forced to stay open and because the mobile home parks retained some economic viability. *Guimont*, at 604-08.

aquifer. The Jones property does not, however, impact the Renton aquifer. This was not the basis for the Council's decision to downzone the Jones property. Therefore, Jones' takings claim does not pass the threshold requirements.

## Substantive Due Process

Jones claims that the change in zoning was unnecessary and without justification, in violation of substantive due process.

Even if an ordinance is not deemed to be a regulatory taking, it must still pass the constitutional due process test of reasonableness. *Presbytery of Seattle v. King Cy.*, 114 Wn.2d 320, 330, 787 P.2d 907, *cert. denied*, 498 U.S. 911, 112 L. Ed. 2d 238, 111 S. Ct. 284 (1990). The *Presbytery* court established a 3-prong test for making this determination: (1) is the regulation aimed at achieving a legitimate public purpose; (2) does it use means that are reasonably necessary to achieve that purpose; (3) is it unduly oppressive to the landowner. *Presbytery*, at 330.[14] If an ordinance is invalid under a substantive due process analysis, the proper remedy is to strike the ordinance. *Presbytery*, at 331-32.

In applying the substantive due process test we give deference to legislative policy decisions. *Guimont*, at 609 n.10 (citing *Goldblatt v. Hempstead*, 369 U.S. 590, 595, 8 L. Ed. 2d 130, 82 S. Ct. 987 (1962)). "If the court can reasonably conceive of a state of facts warranting the legislation, those facts will be presumed to exist." *Tekoa Constr., Inc. v. Seattle*, 56 Wn. App. 28, 34, 781 P.2d 1324 (1989) (citing *Duckworth v. Bonney Lk.*, 91 Wn.2d 19, 27, 586 P.2d 860 (1978)), *review denied*, 114 Wn.2d 1005 (1990).

## Legitimate Public Purpose

Jones argues that the proposed area zoning does not serve a public purpose because the County found no environmental constraints to an urban zoning of the property. The

---

[14]The *Presbytery* appellants challenged a county ordinance prohibiting them from building on part of their property due to the presence of wetlands.

While establishing the formula for deciding takings/due process claims, the *Presbytery* court did not apply either. It rested its decision on an exhaustion claim. *Presbytery*, at 339-40.

County responds that some constraints do apply to the Jones property, and that even if they did not, the Jones property should not be given a zoning inconsistent with the rural zoning the council adopted for the surrounding area.

Ordinance 10197 was enacted for a legitimate public purpose. The ordinance was designed to further the goals of sound planning and land use control generally. Jones does not dispute this, but argues that, as applied to the Jones property, the ordinance does not serve its purpose.

Even as applied to the Jones property, however, the ordinance addresses some environmental constraints. At least part of the property lies in the Cedar River floodplain. Also, the Cedar River supports anadromous fish. It is reasonably conceivable that the Legislature thought a rural classification could help prevent any damage to the Cedar River that might affect the fish population. Finally, the council also noted that the area in which the Jones property lies contains prime agricultural soils, and it could reasonably have believed that zoning the Jones property rural would preserve these soils.[15]

## Unduly Oppressive

Jones argues that the rezone was unduly oppressive due to the substantial and permanent loss of property value caused by Jones' inability to develop it into approximately 1-acre lots.

This third prong usually presents the most difficulty, but the Washington Supreme Court has provided some guiding principles including "the nature of the harm sought to be avoided; the availability and effectiveness of less drastic protective measures; and the economic loss suffered by the property owner." *Presbytery*, at 331. Some nonexclusive factors the court uses to amplify this analysis include:

> On the public's side, the seriousness of the public problem, the extent to which the owner's land contributes to it, the degree to which the proposed regulation solves it and the feasibility of less oppressive solutions would all be relevant. On the owner's side, the amount and percentage of value loss, the extent of remaining uses, past, present and future uses, temporary or permanent nature of the regulation, the extent to which the

---

[15]The second prong is clearly met here, as the zoning was related to protection of the environmental constraints the council recognized.

owner should have anticipated such regulation and how feasible it is for the owner to alter present or currently planned uses.

*Presbytery*, 114 Wn.2d at 331 (citing William B. Stoebuck, San Diego Gas: *Problems, Pitfalls and a Better Way*, 25 Wash. U. J. Urb. & Contemp. L. 3, 33 (1983)).

Both *Sintra* and *Robinson*, which considered the impact of Seattle's Housing Preservation Ordinance, are instructive here. This housing preservation ordinance required developers razing low income housing to pay large fees to a city fund used to construct low income housing. The ordinance was deemed overly oppressive because it foisted upon a discrete group of individuals and developers the responsibility of solving the society-wide problem of homelessness. This was accomplished by levying exorbitant fees, even though the developers were not responsible for the problem. *Sintra*, 119 Wn.2d at 22; *Robinson*, 119 Wn.2d at 55. In *Guimont*, the court made a similar finding in the context of low income mobile home owners. *Guimont*, at 611-13.

The decision to rezone the Jones property AR-5 was not unduly oppressive. On the public's side, the council felt the problem was fairly serious, singling out the area north of Maple Valley Highway for special treatment. The Jones property contributed at least in part to the environmental concerns. The zoning lowered the intensity of permitted habitation to the extent necessary to solve the problem. Finally, the only less oppressive solutions would require higher density development which could damage the environment in precisely the way the council sought to avoid.

On Jones' side, there is certainly some value loss, but the amount cannot be determined from this record. While AR-5 zoning allows fewer homes than SC zoning, the record is devoid of information concerning the relative prices these homes could be sold for or how many homes could be built under either zoning classification. While Jones could not have anticipated this rezoning, the AR-5 classification does not make unfeasible the current use of the property, nor does

it eliminate all future development. Jones' substantive due process rights were not violated.

Affirmed.

PEKELIS, A.C.J., and SCHOLFIELD, J., concur.