917 P.2d 1093 (1996)
82 Wash.App. 284
Craig CHRISTIANSON and Theresa Christianson, husband and wife, Appellants,
v.
SNOHOMISH HEALTH DISTRICT, Respondent.
No. 35256-3-I.
Court of Appeals of Washington, Division 1.
May 13, 1996.
Publication Ordered June 17, 1996.
*1094 Drew Nielsen and Nielsen & Nielsen, Everett, for Appellants.
William J. Crowley and Crowley & Mackin, Seattle, for Respondent.
BECKER, Judge.
Craig and Theresa Christianson appeal the Snohomish Health District's denial of construction clearance for an addition of 180 square feet to their lakeside cabin. The Snohomish Health District (the District) denied clearance in accordance with a resolution that generally prohibits the remodeling *1095 of buildings attached to substandard septic systems. We affirm because the decision is supported by the evidence and the resolution as applied to the Christiansons does not violate their right to substantive due process.
The cabin in question is on a small, steeply sloped lot on the south shore of Lake Bosworth. The Christiansons use it for weekend recreation. When they purchased the lot in August, 1990, the cabin's only plumbing fixtures were a toilet and a kitchen sink. A septic tank system handled the sewage. The Christiansons began to remodel the cabin by adding ten feet across its full width on one side. They thought they might eventually install a shower.
Responding to a complaint received in August, 1991, the District discovered that the old septic system on the Christiansons' lot was failing. There is no public sewer system available. The District notified the Christiansons that they would have to repair the system. The Christiansons applied for a permit to install a new septic system, and at the same time applied for the necessary permits for the remodel.
The repaired system did not meet standards for a new onsite sewage disposal system. The District expected that the new system would eventually fail hydraulically and that its useful life would not be as long as the cabin's, but nevertheless approved the system as the best that could be obtained for the site.
At the same time, the District denied approval for the enlargement of the cabin. The District's reasoning was that the addition would make the cabin more commodious, thus increasing both its potential and actual use, which in turn would increase sewage flows into the substandard system. In taking this position the District relied on Resolution 87-35. The general thrust of Resolution 87-35 is to prohibit the construction of additions on buildings with substandard septic systems. The Resolution does permit the District to waive its requirements in cases meeting certain specified criteria. The District determined these criteria were not satisfied in the Christiansons' case.
The hearing examiner sustained the District's decision. The superior court found substantial evidence to affirm the decision of the hearing examiner, and also concluded that Resolution 87-35, as applied to the Christiansons, does not violate substantive due process.
We review the hearing examiner's factual findings for substantial evidence, and we review alleged errors of law de novo. Hilltop Terrace Homeowner's Ass'n v. Island County, 126 Wash.2d 22, 29, 891 P.2d 29 (1995). The burden is on the challenging party to demonstrate that there is not substantial evidence in support of a challenged finding. Nordstrom Credit, Inc. v. Department of Revenue, 120 Wash.2d 935, 940, 845 P.2d 1331 (1993).
Resolution 87-35, section 4, permits a waiver by the District when:
additions, alterations, repairs, or improvements to the building or structure are compatible with and do not adversely impact the existing onsite sewage disposal system and potential reserve drainfield area, [2] the system is adequate to treat the onsite sewage expected to be generated over the remaining useful life of the structure, and [3] the continued operation of the system will not adversely affect public health, surface water quality, or ground water quality.
All three criteria must be met before a waiver can be issued. The Resolution, in section 4(1)(b), provides eight interpretive factors to consider in determining whether the primary criteria have been met. The hearing examiner concluded that the system did not meet any of the three primary criteria for granting a waiver. The hearing examiner incorporated the eight interpretive factors into his decision and concluded that most of them also disfavor waiver.
The hearing examiner found it unreasonable to believe that the cabin would not be used at least as intensively as before the addition. The examiner found the following problems remained even after installation of the new septic system: inadequate shoreline setback; inadequate separation between the water well and the system; inadequate vertical separation between the system and the *1096 seasonal high water table; inadequate reserve area; and unsuitable soil conditions. An addition across the south side of the cabin would make matters even worse by further reducing the area available for a reserve. The Christiansons do not challenge these findings.
The Christiansons incorrectly assume that the District must prove to the hearing examiner that the criteria for waiver are not met. For example, they argue the District did not prove that the deficiencies of their new system actually would have an adverse affect on water quality. The Resolution does not explicitly allocate the burden of proof, but because it is the applicant who seeks the waiver, it is the applicant who must establish that the criteria for waiver are present. In this way, the waiver works the same way as variance in the zoning context, where the party requesting a variance has the burden of proving it is entitled to a variance. See Douglass v. City of Spokane, 25 Wash.App. 823, 829, 609 P.2d 979 (1980).
Thus it was the Christiansons' burden to show that their remodel would not impact the potential reserve drainfield area, that their septic system would last as long as the cabin, and that it would continue to function without causing a public health problem. The only evidence they offered was their testimony that they did not plan to spend any more time at the cabin as the result of the remodel and that they would not add a shower without permission. This did not meet the District's evidence that the new septic system was already inadequate for the site and would fail in the not too distant future. Even if it could be guaranteed that the Christiansons or their successors would not increase the cabin's sewage production after the remodel, evidence showed that the space added would compromise the space available as a reserve drainfield, thus hastening the day of the foreseeable failure.
The Christiansons argue that there will be no adverse impact on water quality when the system eventually fails because at that point the District can require the occupants to abandon the cabin. We reject this argument. The resolution is designed to prevent public health problems, not to abate them after the fact. Public health resolutions are to be liberally construed to preserve, promote, and improve public health. Spokane County Health Dist. v. Brockett, 120 Wash.2d 140, 149, 839 P.2d 324 (1992).
The Christiansons next assert a substantive due process challenge to Resolution 87-35 as applied to them. Clear authority provides that in a substantive due process challenge the burden of proof is on the party challenging the regulation. Margola Associates v. Seattle, 121 Wash.2d 625, 649, 854 P.2d 23 (1993). The Christiansons urge that the placement of the burden of proof has been changed by a recent Supreme Court decision, Dolan v. Tigard, ___ U.S. ___, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). Dolan is a takings case, not a substantive due process case. The City of Tigard required Dolan to dedicate some of her property to public use. Dolan, ___ U.S. at ___ _ ___, 114 S.Ct. at 2313-14, 129 L.Ed.2d at 313. The case thus involved a governmental exaction of a property interest, which is not at issue here. We likewise find no guidance in North Suburban Sanitary Sewer Dist. v. Water Pollution Control Comm'n, 281 Minn. 524, 162 N.W.2d 249 (1968), which does not involve a substantive due process challenge and makes no mention of the burden of proof.
The substantive due process test is articulated in Presbytery of Seattle v. King County, 114 Wash.2d 320, 787 P.2d 907, cert. denied, 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990). Presbytery requires reviewing courts to determine (1) whether the regulation has a legitimate purpose; (2) whether the challenged regulation uses means "reasonably necessary" to achieve that purpose; and (3) whether the regulation is "unduly oppressive on the landowner." Presbytery of Seattle, 114 Wash.2d at 330, 787 P.2d 907. The Christiansons acknowledge that the Resolution has a legitimate public purpose of protecting water quality. They contend that requiring full compliance with modern sewage disposal standards as a condition for all structural additions is not reasonably necessary to achieve that purpose.
*1097 As a general rule, the enlargement of interior space tends to increase sewage production. The complaint of the Christiansons is that the Resolution does not provide a means to take into account their individual situation, specifically their testimonial assurances that they do not intend to use the cabin more intensively after the remodel than they did before.
Their argument implies that under the "reasonably necessary" part of the substantive due process test, the means chosen must solve a presently existing water quality problem in every individual case to which the regulation is applied. They cite no authority for the proposition that water quality regulations must be so precisely tailored. The assumption that a more commodious cabin invites increased use is reasonable. Restrictions on remodels "tend to solve" the potential problem of sewage pollution resulting from a substandard disposal system by discouraging increased use of that system. See Presbytery, 114 Wash.2d at 330, 787 P.2d 907. Simply accepting an assurance by the occupants that they will not increase their use is unlikely to be an effective means of preventing increased use, and it would likely involve the District in expensive monitoring and policing.
The Christiansons further complain that the Resolution does not treat all possible improvements to living space quality the same as it treats additions. They point out that other unregulated improvements, such as adding a television or a skylight, might increase the comfort level of the home just as much as more space does, similarly inviting more usage and increasing the sewage production.
The mere existence of other means does not establish that the means actually chosen were not reasonably necessary. Margola Assoc. v. City of Seattle, 121 Wash.2d 625, 649, 854 P.2d 23 (1993). The District could have devised a way to gauge and regulate actual sewage production. The District could also have required good septic systems as a condition for television ownership or the installation of skylights. These alternative means may have been just as effective in protecting water quality; but to sufficiently defend its decision, the District is not required to pursue these alternative means or justify its decision not to pursue them. We conclude the Christiansons have not met their burden of showing the means chosen are not reasonably necessary.
According to Presbytery, the third inquiry whether the regulation is unduly oppressive upon the person regulatedis usually the "difficult and determinative" part of the substantive due process test. Presbytery, 114 Wash.2d at 331, 787 P.2d 907. The Christiansons rely on two cases in which a particular government regulation was found to be too oppressive. In the first, Sintra, Inc. v. City of Seattle, 119 Wash.2d 1, 829 P.2d 765, cert. denied, 506 U.S. 1028, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992), the city had levied a $219,000 low-income housing fee on the plaintiff developer, but not other similarly situated developers. In the second, Guimont v. Clarke, 121 Wash.2d 586, 854 P.2d 1 (1993), cert. denied, 510 U.S 1176, 114 S.Ct. 1216, 127 L.Ed.2d 563 (1994), a law required owners of a mobile home park to pay up to $7,500 in relocation assistance for each tenant if the owner chose to close the park.
In Guimont and Sintra the court considered the following factors:
On the public's side, the seriousness of the public problem, the extent to which the owner's land contributes to it, the degree to which the proposed regulation solves it and the feasibility of less oppressive solutions would all be relevant. On the owner's side, the amount and percentage of value loss, the extent of remaining uses, past, present and future uses, temporary or permanent nature of the regulation, the extent to which the owner should have anticipated such regulation and how feasible it is for the owner to alter present or currently planned uses.
Guimont, 121 Wash.2d at 610, 854 P.2d 1 (quoting Presbytery, 114 Wash.2d at 331, 787 P.2d 907); accord, Sintra, 119 Wash.2d at 22, 829 P.2d 765.
These considerations, applied to the regulation in question, show that it is solidly justified from the perspective of the public *1098 interest. Water quality is a public health concern of the highest order. The fundamental reason why an owner is prohibited from building an addition is not to solve some free-floating society-wide problem, but to prevent that particular owner from causing a sewage problem on that particular lot because that particular lot cannot accommodate an up-to-date sewage disposal system. Continued operation of the Christiansons' substandard system is a threat to ground and surface water because of the system's proximity to the lake shoreline, its inadequate vertical separation from the seasonal high water table, and unsuitable soil type. The proposed addition would have an adverse impact on water quality by further reducing the potential reserve drainfield and potentially increasing sewage flows. While direct monitoring and regulation of actual sewage flows might be less oppressive, it would surely be less feasible, too.
The Christiansons argue that Resolution 87-35, because it regulates additions rather than actual septic system use, puts an unfair burden on them. Lakeside owners with existing substandard systems may increase their actual septic system use simply by increasing their use to full-time, or renting their cabins, while the Christiansons are denied their addition even if they continue to limit their actual use only to occasional weekends. This does not amount to an unequal burden imposed on the Christiansons. They too can increase their use to full time so long as they do not build an addition. The regulations apply only to additions, and they apply equally to all owners seeking to build additions. Additions to substandard systems tend to cause problems directly attributable to the additions, unlike the problem of homelessness that the regulation in Sintra attempted to solve. See Sintra, 119 Wash.2d at 22, 829 P.2d 765. If the District were empowered to reject every conceivable means of making lakeside cabins more commodious, such as the addition of televisions, skylights, and carpets, that would be more oppressive, not less.
Unlike the regulations at issue in Guimont and Sintra, Resolution 87-35 does not require any expense by the Christiansons. It does not forbid or alter any of the uses currently being made of the lot. There is no reason to believe that the Christiansons should not have anticipated the Resolution's impact upon their plans. As the hearing examiner observed, it is only because of the special grandfather provisions for failing systems that the Christiansons are permitted to use their cabin at all. In short, the considerations on the side of the owner do not show the regulation to be unduly oppressive.
We conclude that the regulation, as applied to the Christiansons, does not violate substantive due process.
Affirmed.
COLEMAN and GROSSE, JJ., concur.