983 P.2d 1135 (1999)
Michael GIRTON, Appellant,
v.
CITY OF SEATTLE, a political subdivision of the State of Washington, Respondent.
No. 42333-9-I.
Court of Appeals of Washington, Division 1.
July 12, 1999.
As Amended on Denial of Reconsideration and Partial Publication Ordered September 8, 1999.
*1136 John M. Groen, Groen & Stephens, Bellevue, WA, For Appellant.
Judith B. Barbour, Asst City Attorney, Seattle, WA, For Respondent.
*1137 COX, J.
Michael Girton appeals the superior court's dismissal of his appeal under the land use petition act (LUPA).[1] Because Girton properly concedes that the challenged steep slope ordinance has a legitimate public purpose, and fails in his burden to show either that the ordinance uses means that are not reasonably necessary to advance that purpose or that application of the ordinance is unduly oppressive to him, we reject his due process challenge. We also hold that the ordinance is not unconstitutionally vague and that the City of Seattle is not collaterally estopped from applying the ordinance in this case. We affirm.
Girton owns a 5,004-square-foot piece of property on the south slope of Queen Anne Hill. In 1993, he obtained a building permit to construct a three-story house on the property. Lacking funds, he did not begin construction. The permit expired in April 1995.
Girton later sought to renew the expired permit to build the house. But regulations under the environmentally critical areas (ECA) ordinance, passed in 1992, prohibited the construction plans. Girton was able to obtain the 1993 building permit only because he had applied for the permit in 1990, before the ECA ordinance regulations were enacted. Therefore, under the vested rights doctrine, the regulations did not apply to that application. Girton was unable to renew the permit, however, once the regulations applied to his application.
These regulations, designed to control the harms of soil erosion, allow no more than 30 percent disturbance of a steep slope area. Because Girton's design plan would have disturbed 64 percent of a steep slope on his property, he sought relief from strict application of the steep slope regulation under an ECA exception.
The Department of Construction and Land Use (DCLU) denied the application for exception. The City of Seattle Hearing Examiner affirmed DCLU's decision.
Girton then sought judicial review under LUPA of the hearing examiner's decision. The superior court affirmed, dismissing the petition. Girton appeals.

Due Process
Judicial review of land use decisions is governed by LUPA. Specifically, RCW 36.70C.130(1) provides that the court may grant relief only if certain criteria are met. Girton asserts in his opening brief that he can establish a right to relief under four of the six statutory criteria. But his argument in the briefs is limited to only one of these criteria: "The land use decision violates the constitutional rights of the party seeking relief."[2] Thus, we deal only with those issues relating to that criterion.
We stand in the shoes of the superior court and review the hearing examiner's action de novo on the basis of the administrative record.[3] We review alleged errors of law de novo.[4]
Girton's primary contention on appeal is that Seattle's refusal to modify the development standards under the ECA exception violated his substantive due process rights under the fourteenth amendment. We hold there was no such constitutional violation.
Washington courts apply the three-pronged test stated in Presbytery of Seattle v. King County[5] to determine whether a regulation violates due process. There, the court stated the test as "(1) whether the regulation is aimed at achieving a legitimate public purpose; (2) whether it uses means that are reasonably necessary to achieve that purpose; and (3) whether it is unduly oppressive on the landowner."[6] Legislative enactments *1138 are presumed to be constitutional, and the party challenging an enactment bears the burden of proving beyond a reasonable doubt that it is unconstitutional.[7]
At oral argument, Girton conceded that he cannot meet his burden of proving a due process violation under prong one of the test. He likewise acknowledged in his brief that the steep slope ordinance is aimed at achieving the legitimate public purpose of preventing the harms caused by soil erosion. We accept both of these concessions as well-taken. As stated in the ECA policies, "Development on steep slopes shall be regulated in order to protect the public health, safety, and welfare by minimizing erosion, water runoff, and siltation of streams, lakes, Puget Sound, and the City's stormwater facilities."[8]
The regulation that is at issue here is designed to limit modifications of the development standards that protect the above legitimate public purpose. As such, the regulation functions in much the same way as a variance. It necessarily follows that such a regulation is likewise aimed at achieving the same legitimate public purpose as the development standards. In this respect, the ECA exception does precisely that. That regulation states:
The Director may modify an environmentally critical areas development standard when an applicant demonstrates to the Director's satisfaction that strict application of the development standards would be unreasonable and that development undertaken pursuant to the modified standards would not cause significant injury to occupiers of the land, to other properties, and to public resources, or to the environment.[9]
Based on the record before us and the arguments of the parties, the focus of the constitutional challenge is whether strict application of the development standards by denial of the ECA exception was unreasonable.
Without acknowledging the principle that he has the burden of showing a violation of his due process rights, Girton contends that he has established a violation under the second prong of the Presbytery test. We cannot agree.
Girton argues that the means used in this particular case are not necessary to achieve the ordinance's legitimate public purpose. Because it is undisputed that Girton's plans would not cause "significant injury," he contends that denying the exception does nothing to advance the goal of preventing the harms of erosion.
Prongs one and two of the Presbytery test ask "(1) whether the regulation is aimed at achieving a legitimate public purpose; [and] (2) whether it uses means that are reasonably necessary to achieve that purpose."[10] The pronoun "it" in the second prong plainly refers to the challenged regulation that is the subject of the first prong's inquiry. In asking whether the regulation uses means necessary to achieve its public purpose, the second prong of the test focuses on the regulation generally, not on its application to a specific piece of property. Girton's reading of the test to the contrary is inconsistent with the view expressed by our courts that each specific application of the challenged regulation need not advance the regulation's legitimate public purpose.[11]
In Christianson, the Snohomish County Health District denied approval for permits to remodel a weekend recreation cabin. In denying the permits, the District relied on a regulation that prohibited adding on to buildings with substandard septic systems. The Christiansons asserted a substantive due process challenge to the regulation as applied to them. They argued that the regulation did not use means "reasonably necessary" to achieve its public purpose because it did not *1139 solve an existing water quality problem in their individual case. This court held that there was no requirement that the regulation be "precisely tailored" to solve an existing problem in every individual case.[12] Rather, our court observed that the second prong of the Presbytery test is met when regulations "`tend to solve'" the problem being addressed.[13]
Nonetheless, Girton argues that our Supreme Court in its Presbytery decision would have applied the second prong of its test to the specific property there at issue. To support this contention, Girton points to the following language from our Supreme Court's opinion:
Assuming without deciding, that the regulation should be scrutinized under the 3-prong due process analysis [rather than as a taking], we simply do not have all of the required facts needed in order for this court to apply that formula.
Although it might be possible to determine that the regulation was aimed at achieving a legitimate public purpose and that it used means to achieve that purpose, on the limited record here presented it is not possible to determine whether the regulation was unduly oppressive to this landowner.[14]
We fail to see how the above language supports Girton's argument. The court plainly stated that it did not have all the required facts before it to apply the three-prong due process test. As if to emphasize the point, in the very next sentence, the court stated that even if the first two prongs were satisfied, it did not have the facts to apply the third prong, whether the regulation was unduly oppressive to the individual landowner. We decline to rely on this statement, contained in dicta, to depart from established due process analysis.[15]
Girton cites two additional cases for the proposition that courts have applied this prong of the test to specific property. In Sintra, Inc. v. City of Seattle,[16] the King County Superior Court invalidated a housing preservation ordinance that required developers who demolished or changed the use of low income housing to pay large fees to a city fund used to construct low income housing. Despite that ruling, Seattle tried to enforce the ordinance against Sintra. Only after our Supreme Court affirmed the trial court's order did Seattle issue the permit that Sintra had sought for the previous two years. Sintra brought an action for deprivation of substantive due process rights and an unconstitutional taking.
In analyzing Sintra's substantive due process claim, the court applied the Presbytery test to the housing preservation ordinance. It concluded that the first part of the test was met because the ordinance was designed for the legitimate public purpose of preserving low income housing units. As to the second prong of the test, the court stated: "The second part reasonable means is highly suspect given the manner in which the City conducted itself. However, we need not decide if the regulation violates substantive due process on that basis alone."[17] The court focused on the third Presbytery prong and concluded that the ordinance was unduly oppressive. Having resolved the case on other grounds, the Sintra court simply did not apply the reasonable means test, except to reproach Seattle for its questionable conduct.
Likewise, Jones v. King County[18] does not require us to apply the second Presbytery prong to Girton's specific property. There, Jones challenged a downzoning ordinance. He claimed that it did not serve a legitimate public purpose because there was no evidence *1140 that retaining an urban zoning of his property would cause the environmental harm sought to be prevented. We held that the ordinance was enacted for the legitimate public purpose of "further[ing] the goals of sound planning and land use control generally."[19]
Having concluded that the ordinance used reasonable means to achieve its public purpose, we then addressed Jones' as-applied argument. We prefaced that analysis with, "Even as applied to the Jones property, however, the ordinance addresses some environmental constraints."[20] But we are not constrained by that final discussion of the legitimate public purpose analysis to henceforth apply the reasonable means test to a challenger's specific property. That is not what we held in Jones, nor is it the approach that our Supreme Court has followed, as we discussed above.
As stated in Presbytery, the third prong of the test asks "whether it is unduly oppressive on the landowner."[21] Like the test's second prong, the "it" here refers to the challenged regulation. But unlike the focus of the second prong, the focus of this inquiry is clearly on the specific property being regulated. To determine whether a regulation is unduly oppressive on the landowner, courts must balance the public's interests against those of the regulated landowner.[22] The Presbytery court noted that this third prong will usually be the difficult and determinative one.[23] That court listed several interests for courts to consider, including the nature of the harm to be avoided, the availability of less restrictive measures, the economic loss suffered by the landowner, and the landowner's ability to anticipate the regulation.[24]
Girton fails to demonstrate that the development standards as applied to him are unduly oppressive. The public has a significant interest in controlling the harmful effects of erosion, not just in avoiding "significant injury" to property or the environment. Thus, the finding that Girton's design would not cause "significant injury" is not, as Girton argues, the equivalent of a finding that the design poses no dangers associated with erosion. Additionally, requiring Girton to alter the design of his home so that it disturbs only 28 percent instead of 64 percent of the steep slope while losing no square footage cannot be said to be an oppressive or overly restrictive solution.
In contrast to these factors favoring the public's interest, there are few that favor Girton. Significantly, he has demonstrated no economic loss as a result of complying with the ordinance. The property has not diminished in value. Girton can still build a three-story house on the lot without a modification of the ordinance's development standards. And while it is undisputed that the alternate design results in a diminished view, the hearing examiner nonetheless concluded that Girton would still have a 180-degree view from the third floor. Finally, Girton cannot credibly assert that he could not have anticipated this regulation. It was passed before he obtained the first permit that he let expire.
In sum, proper balancing of competing interests shows that the regulation is not unduly oppressive to Girton.
There is no due process violation.
Girton, relying on Maranatha Mining, Inc. v. Pierce County,[25] also argues that Seattle's enforcement of the steep slope ordinance against his specific property is an arbitrary and capricious exercise of its police power. According to Girton, the evidence before the hearing examiner showed that *1141 Girton's design would actually improve slope conditions and help to prevent problems associated with erosion. But the hearing examiner made no such finding. Because our review is limited to whether the examiner's findings are supported by substantial evidence,[26] we will not address the merits of issues not addressed in a finding.
Moreover, Maranatha Mining does not require a different result. There, the Pierce County Council denied a use permit, despite specific findings by the hearing examiner that Maranatha had mitigated all conditions of concern. This court held that the Council's decision was arbitrary and capricious because it was made "without consideration and in disregard of the facts."[27] Here, Girton contends that Seattle similarly denied an exception in disregard of the facts. But the facts he alleges that his proposed design would improve the slope stability, for example are not among the hearing examiner's findings of fact. Accordingly, Seattle's denial of the exception was not made in disregard of those facts and cannot be said to be arbitrary and capricious on that basis.
We affirm the summary judgment order and deny fees on appeal.
The remainder of this opinion has no precedential value and will be filed for public record in accordance with the rules governing unpublished opinions.[28]
KENNEDY, C.J., and GROSSE, J., concur.
NOTES
[1] RCW 36.70C.
[2] RCW 36.70C.130(1)(f).
[3] King County v. State Boundary Review Bd., 122 Wash.2d 648, 672, 860 P.2d 1024 (1993); RCW 36.70C.130(1).
[4] Hilltop Terrace Homeowner's Ass'n v. Island County, 126 Wash.2d 22, 29, 891 P.2d 29 (1995).
[5] 114 Wash.2d 320, 787 P.2d 907, cert. denied, 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990).
[6] Presbytery, 114 Wash.2d at 330, 787 P.2d 907.
[7] Erickson & Assocs. v. McLerran, 123 Wash.2d 864, 869, 872 P.2d 1090 (1994).
[8] Steep slope policies, as amended by Resolution 29253.
[9] SMC 25.09.300(C) (italics ours).
[10] Presbytery, 114 Wash.2d at 330, 787 P.2d 907.
[11] Christianson v. Snohomish Health Dist., 82 Wash.App. 284, 917 P.2d 1093 (1996), aff'd, 133 Wash.2d 647, 946 P.2d 768 (1997); State ex rel. Miller v. Cain, 40 Wash.2d 216, 242 P.2d 505 (1952).
[12] Christianson, 82 Wash.App. at 290, 917 P.2d 1093.
[13] Christianson, 82 Wash.App. at 290, 917 P.2d 1093 (quoting Presbytery, 114 Wash.2d at 330, 787 P.2d 907).
[14] Presbytery, 114 Wash.2d at 337, 787 P.2d 907 (italics ours).
[15] See, e.g., Christianson, 82 Wash.App. 284, 917 P.2d 1093; Cain, 40 Wash.2d 216, 242 P.2d 505.
[16] 119 Wash.2d 1, 829 P.2d 765, cert. denied by Robinson v. City of Seattle, 506 U.S. 1028, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992).
[17] Sintra, 119 Wash.2d at 21, 829 P.2d 765.
[18] 74 Wash.App. 467, 874 P.2d 853 (1994).
[19] Jones, 74 Wash.App. at 480, 874 P.2d 853.
[20] Jones, 74 Wash.App. at 480, 874 P.2d 853.
[21] Presbytery, 114 Wash.2d at 330, 787 P.2d 907.
[22] Presbytery, 114 Wash.2d at 331, 787 P.2d 907.
[23] Presbytery, 114 Wash.2d at 331, 787 P.2d 907.
[24] Presbytery, 114 Wash.2d at 331, 787 P.2d 907.
[25] 59 Wash.App. 795, 801 P.2d 985 (1990).
[26] State Boundary Review Bd., 122 Wash.2d at 672, 860 P.2d 1024.
[27] Maranatha, 59 Wash.App. at 804, 801 P.2d 985.
[28] RCW 2.06.040.